DAPHNE EUGENIE SMITH, *Ex. vs.* CITY OF PROVIDENCE *et al.*

OCTOBER 30, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a bill in equity for the construction of the will and codicil of Charles H. Smith, late of the city of Providence, deceased, hereinafter referred to as the testator. The cause was duly certified to this court by the superior court under the provisions of general laws 1923, chapter 339, sec. 35.

The record shows that the testator died September 4, 1900, leaving the will and codicil now in question. The will is dated August 31, 1897, and the codicil, February 22, 1900. Both these instruments were admitted to probate October 2, 1900.

The complainant is the widow of C. Henry Smith, the legally adopted son of the testator and a beneficiary under his will, where he is described as Charles H. Smith, Junior. No question of identity is involved in this cause. C. Henry Smith died in Boulder, Colorado, on March 25, 1937, leaving a will which made the complainant his sole beneficiary and named her as the executrix of the will. This will was probated in Colorado and letters testamentary were issued to the complainant. Subsequently, a duly authenticated copy of the will was filed in the probate court of the city of Providence, and, on November 17, 1937, the complainant

was appointed and duly qualified as executrix in Rhode Island.

The respondents are: (1) the three trustees under the will and codicil of Charles H. Smith, the testator first mentioned; (2) the city of Providence, which is the remainderman of the residuary trust created by that will; (3) the President and Fellows of Harvard College, a Massachusetts corporation, the contingent remainderman of said trust; and (4) the attorney general of this state, representing the public. The pleadings in the cause have been properly closed.

We will first direct our attention to the provisions of the original will of August 31, 1897. Except in so far as a fuller statement is necessary, we shall only summarize the pertinent parts of the will and of the codicil. Hereafter, all reference by us to C. Henry Smith means the Charles H. Smith, Jr. mentioned in the will and codicil, and the word "son" will identify this same person. The will, containing seventeen clauses, is as follows.

Clause first directs the payment of the just debts of the testator. Clause second gives and bequeaths unto Rose Farrell an annuity of three hundred dollars for life, and creates a special fund to insure its payment. Clauses three to ten inclusive concern a number of legacies not involved in this case. In clause eleven the testator bequeaths to his son all the "jewelry, furniture, . . . and all other household effects" which, at the time of the testator's decease, should "be in or about or belonging to my homestead estate"; and in clause twelfth, he devises to the son a life estate in the "Homestead Estate situate on Reservoir Avenue in said City of Providence." The residue and remainder of the testator's estate is devised and bequeathed by clause thirteenth to the son and Walter F. Angell as trustees in trust for certain specific purposes. The provisions of this clause form the basis of the controversy in the instant cause.

Omitting unnecessary particulars, clause thirteenth directs payment, in quarterly installments, to the son for his life, of one-fourth of the accruing net dividends and profits arising from the residuary trust personal estate, *until* converted into real estate, and one-fourth of the net rents and income arising from the residuary trust real estate. It then directs that the remaining three-fourths of the net dividends, profits, rents and income be accumulated as part of the principal of the trust estate, and that such accumulation be used to purchase income-producing real estate in the city of Providence. It further provides, speaking generally, that, upon the happening of certain conditions the "son's right to and interest in" said quarter share of income shall "forthwith cease and determine." Thereafter, subject to certain exceptions in favor of the son's wife, child or children, it provides for the accumulation and investment of said quarter share as principal of the trust estate.

Clause fourteenth provides that upon the death of the son, the residuary trust estate shall go to the city of Providence in perpetual trust to apply the income for certain specified purposes in connection with Roger Williams Park. It further provides that if the city of Providence shall refuse to accept such residuary estate as devised and bequeathed, or, having accepted it, shall thereafter fail to apply the income as directed, the city shall forfeit said estate, and the estate shall then go to Harvard College for scholarships to students in that university who are graduates of Providence high schools.

Clause fifteenth gives some further powers to the trustees under the thirteenth clause. Clause sixteenth appoints the son and Walter F. Angell executors of the will. Clause seventeenth gives the executors power to sell any personal estate not specifically disposed of, if available funds are insufficient to pay all debts and legacies.

We now come to the codicil of February 22, 1900. Clause first, in full, is as follows: *"I hereby revoke and annul any and all devises, bequests and appointments of every nature whatsoever, heretofore made to Charles H. Smith junior,* and I direct my trustees, hereinafter named, to pay to said Charles H. Smith, junior, out of the net income of my trust estate in their hands, the sum of five hundred dollars ($500) per annum, in equal monthly payments, during the term of his natural life."

Clause second gives the use of his house on Reservoir avenue in the city of Providence to his "faithful servant, Rose Farrell, for her life, free of charge." Clause third gives to Rose Farrell absolutely all his jewels and furniture; it also increases the annuity given to her under the second clause of the will from $300 a year to $100 a month for life.

Clause fourth increases his bequest to the beneficiary named in the fourth clause of the will. Clause fifth directs his trustees, thereafter named, to convert all his personal property, not otherwise bequeathed by him, into good paying real estate in the city of Providence as principal of the trust estate "until both the said Rose Farrell and Charles H. Smith, junior, shall have deceased; and to accumulate and invest the net income from said real estate, after paying out of the same the amounts provided to be paid out by my said will as modified by this codicil, in other real estate", until the death of the survivor, when the trust shall terminate and the trust estate is to be applied in accordance with the terms of the will.

Clause sixth names and appoints "James F. Freeman, Harry S. Hathaway, and Walter F. Angell, all of said Providence, as executors and trustees of said will and this codicil." The pertinent part of clause seventh, which is the last clause in the codicil, reads as follows. "I declare that if any person shall contest or dispute the validity of my

said will or of this codicil, or of any provisions of either said will or codicil, or shall object to the probate of said will or codicil or appeal from such probate, then and in any such case all dispositions in said will or codicil contained in favor of such person shall cease and be void to all intents and purposes whatsoever and are hereby revoked accordingly."

The controlling question in this cause is: Was the gift to C. Henry Smith, contained in the thirteenth clause of the will, of one-fourth part of the net dividends and profits, rents and income of the residuary trust estate revoked by the codicil?

Over the complainant's repeated objections, the superior court received evidence of the circumstances surrounding the testator when he executed the will and codicil, and also received evidence of the conduct of C. Henry Smith, both before and after the execution of those instruments. The complainant contends that the superior court should have sustained her objections to such evidence, asserting that: "There is no latent ambiguity in the language of the will or codicil . . . ." Upon a careful examination of the will and codicil, we do not find it necessary to go beyond those instruments to determine for ourselves the intention of the testator. As we will give no weight to the extrinsic evidence above mentioned, there is no need to discuss the merits of complainant's objections. We briefly refer to the following facts merely for background.

C. Henry Smith was legally adopted, brought up and educated by the testator. Following his graduation from Brown University in June 1899, he was employed in the testator's real estate office. In December of that year he went to Colorado, where he remained until his death in 1937, except for a few short visits to Providence. When he died, he was librarian, with the rank of professor, of the University of Colorado.

Shortly after the testator's funeral, C. Henry Smith, who was then more than twenty-one years of age, came to Providence and talked with Walter F. Angell, one of the three executors and trustees named in the codicil. At that time, Mr. Angell informed him of the terms of the will and codicil, furnished him with a copy of those instruments and suggested to him that he should consult independent counsel if he had any doubt of his father's intention as therein expressed. The will and codicil were probated in 1900 without objection, and no proceedings were instituted for the construction of those instruments before the instant cause. Up to the time of the death of C. Henry Smith, which occurred in 1937 after the death of Rose Farrell, he accepted without protest the total sum of $500 a year, which the trustees sent him in compliance with the provisions of clause first of the codicil.

The complainant admits that the first clause of the codicil was sufficient to revoke the gifts made to C. Henry Smith in the tenth and eleventh clauses of the will, together with his appointment as executor and trustee, but denies that said first clause was sufficient to revoke the provisions for his benefit in the thirteenth clause of the will. She contends that the testator intended to *add* an annuity of $500, to be paid to him from the trust income, to the prior provision for the payment to him of one-fourth of the income accruing from the trust estate. In her brief she says that: "As a modest recompense" for what he took away by effective revocation, the testator "added a definite, specific annuity of $500, payable, it may be noted, in monthly installments, as basic guaranteed income." The respondents, on the other hand, contend that the all-inclusive language of the first clause of the codicil leaves no reasonable doubt that it was the clear intention of the testator to revoke *all* provisions of the will in favor of his son.

The scheme of the will, exclusive of the codicil, discloses that the dominant intention of the testator was to establish a perpetual trust for the purposes specified in clause fourteenth thereof. This scheme is not changed by the codicil. Indeed, the dominant intention of the testator, as above indicated, appears even more clearly when the will and codicil are read together.

The will and codicil were drawn by Walter F. Angell, an experienced member of the bar of this state, who undoubtedly used the words of art in these instruments in their technical meaning *under the law of wills*. The first clause of the codicil revokes and annuls "any and all devises, bequests and appointments of every nature whatsoever, heretofore made to Charles H. Smith, junior." This language of revocation is sweeping and all inclusive. Yet the complainant contends that the language used is not sufficiently clear to include a revocation of the provision for the payment of income to the son in the thirteenth clause of the will.

It is well settled that a codicil should not be allowed to vary or modify the will, except so far as the intention of the testator that it shall do so is made manifest. It is fundamental that the codicil and will must be read together as one instrument, and consideration must be given to both instruments to ascertain the intention of the testator. A specific revocation is not necessary to make the testator's intention to revoke clear. In *Derby* v. *Derby*, 4 R. I. 414, at page 429, this court says: "It is sufficient that the intent to make a disposition of the estate which is inconsistent with the prior gift is made as clear as the original gift."

The complainant calls to our attention the rule that, where a devise or bequest is clear and unambiguous in a will, it shall not be revoked by doubtful or ambiguous expressions in a codicil. This is but another way of stating the rule just quoted from *Derby* v. *Derby*, *supra*. Applying this rule, she contends that the language of the first clause

of the codicil in question is not sufficiently clear to effect a revocation of the provision in clause thirteenth of the will for the payment of trust income to C. Henry Smith. In support of this contention she argues that the words "bequest" and "devise", in the first clause of the codicil, cannot be construed to mean income from the trust estate. Admitting that a "bequest" is a gift by will of personal property, she attempts to restrict its technical meaning to "a gift of a specific article or of an ascertained and definite amount", and concludes that the payment of a variable amount from the income of a trust fund is not a "bequest" within the accepted technical meaning of that term.

She further argues that, if the testator had actually intended to revoke the payment of income set forth in the thirteenth clause of the will, he would have said in the first clause of the codicil, as he did in the seventh or *in terrorem* clause, that he revoked "all dispositions heretofore made to C. Henry Smith", instead of limiting himself to the technical terms which he adopted.

We find no authority that supports the complainant in her attempt to restrict the comprehensive meaning of the words "bequest" and "devise" as just indicated. These words have acquired a definite legal meaning *in the law of wills,* while the word "disposition" has no definite meaning in that law and is ordinarily subject to interpretation as to its true meaning in any particular instance.

In the instant cause, the trust provision in clause thirteenth of the will is a testamentary gift to C. Henry Smith of a beneficial, equitable interest for life in one-fourth of the net income of the trust estate, subject to divestment in certain events. Courts refer to testamentary gifts of trust income as "bequests". This court is no exception.

The following cases are illustrative. In *Frelinghuysen* v. *New York Life Ins. & Trust Co.,* 31 R. I. 150, where the trus-

tees under a will were directed to apply the income and interest from a trust fund to the use of one Mary B. Derby and another, this court, at page 166 of that opinion, says: "The *bequest* to her is of the *income* for life . . . ." (italics ours) In *Goffe* v. *Goffe,* 37 R. I. 542, where one of the questions in the construction of a will was whether the executors took certain real estate and the residue of the personal property in trust for the life of a daughter of the testator, the court, at page 548, says: "There are no explicit words making a bequest of the personal property to the executors for the benefit of Elizabeth, but the *bequest of the income* therefrom presupposes the setting apart, preservation, care, custody and investment of the principal sum, the collection and disbursement of the profit arising therefrom by some one in behalf and for the benefit of the *cestui que trust."* (italics ours) Again, in *Roberts* v. *Wright,* 48 R. I. 139, 140, where the construction of a codicil was involved, the court, at page 141, says: "In so far as concerns the money of the testator on deposit in the Providence Institution for Savings and the Rhode Island Hospital Trust Company the codicil is a revocation of the *bequest of the income* . . . ." (italics ours) See also *Bliven* v. *Borden,* 56 R. I. 283, 303.

The complainant has presented no authority which, even remotely, supports the limitation placed by her on the legal meaning of the word "bequest" in her contention. The cases which she cites are not germane, because they do not involve the question of whether the testamentary gift of income from a trust estate is a "bequest". Furthermore, the point in issue in almost all the cases upon which she relies involves the construction and application of some statute in connection with taxation, and not of the law of wills.

One of the cases she cites is *Decker* v. *Vreeland,* 156 N. Y. Supp. 442. In this case a testator left his residuary estate to certain individuals to hold in trust for and to pay the income to a church association in certain counties. The will

was contested on the ground that such a gift was in violation of the decedent estate law. The court held that there was no violation of the statute, as the "residuary devises and *bequests* . . . are not to a 'society, association or corporation in trust or otherwise', but are to trustees . . . to use the *income* towards the maintenance of certain churches. . . . Our Legislature did not design to prevent income as such from going to charitable purposes." (italics ours) We are unable to see how this decision can be of any assistance to the complainant in the instant cause.

The complainant strongly relies upon the case of *Irwin* v. *Gavit*, 268 U. S. 161, as supporting the restricted meaning which she seeks to give to the word "bequest". The sole question before the court in that case was whether the sums received by the plaintiff, payable to him for life in quarter-yearly installments from the net income of a trust estate under the will of one Anthony N. Brady, were income and taxable as such under the income tax act of 1913.

Following a quotation from the income tax law, the court, at page 167 of the opinion, says: "The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the *bequest* might be said to be of the corpus for life, in the second *it* might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and. contrasts it with the income arising from it . . . ." (italics ours)

It is clear that in the *Irwin* case the pertinent provision of the will involved was considered by the court only in

so far as it related to the applicability of the income tax law. Yet even in that case the testamentary gift, whether of corpus or of income, was termed a "bequest" by the court, and, when properly read, is authority against the complainant in the instant cause.

In attempting to restrict the legal meaning of the word "bequest" in the law of wills, the complainant erroneously narrows the legal meaning of the language of the testator in the first clause of the codicil in question, which revokes and annuls "any and all devises, bequests and appointments of every nature whatsoever, heretofore made to Charles H. Smith, junior." This definite and all-inclusive language makes no distinction between bequests of legal and equitable interests, or between bequests of tangible and intangible property.

In the absence of any express qualification in the language of the testator, we are not at liberty to construe his language more narrowly than the ordinary legal import of the words which he actually used with the assistance of experienced counsel.

After careful consideration of the will and codicil in this cause, we are of the opinion that it was the clear intention of the testator to annul and revoke the bequest of trust income to C. Henry Smith in the thirteenth clause of the will; and, further, that it was the clear intention of the testator that, under his will as modified by the codicil, C. Henry Smith was to receive only the yearly sum of $500, in equal monthly payments for life, as the total amount of the testator's benefaction to him.

On November 15, 1939, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Charles C. Remington, Remington, Thomas & Levy, Elmer S. Chace, Stockwell, Chace & Yatman,* for complainant.

*James A. Higgins,* for trustees.

*Eliot G. Parkhurst, Bancroft Littlefield, Edwards & Angell,* for Harvard College.

*Daniel E. Geary,* City Solicitor, *John T. Walsh,* Assistant City Solicitor, for City of Providence.