PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES *vs.* CONTRIBUTORS TO PENNSYLVANIA HOSPITAL *et al.*

NOVEMBER 27, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This bill in equity for the construction of the will of the late Alexander G. Mercer was brought by the complainant, a Philadelphia trust company, as trustee under said will and also under a deed of trust executed by the executrix under said will. The respondents, who appear to be all of the persons interested, filed answers and the cause, being ready for hearing for final decree, was certified to this

court under the provisions of general laws 1923, chapter 339, sec. 35 (G. L. 1938, c. 545, §7).

It appears that Alexander G. Mercer, the testator, died a resident of Newport, Rhode Island, on November 3, 1882. His will, executed September 28, 1870, was written by himself and was duly probated on December 4, 1882. It provided in sections I to VIII for the appointment of executors, made certain pecuniary and other bequests, and gave certain other directions not here in question. It then provided in section IX that the residue be deposited with the complainant trust company and divided into thirty shares to be held and managed by it *in trust*, to pay the interest on these shares to designated persons in certain proportions, for their natural lives, except two who took for the life of another. As each of these life beneficiaries died, or his life estate was terminated, the interest on the part held in trust for that beneficiary was to be accumulated and added to the principal until the death of the last survivor of all the life beneficiaries. At that time the complainant as trustee was directed to divide, according to the provisions of section X of the will, the principal together with all accumulations.

The pertinent part of section X then applicable reads as follows: "I will that on the decease of each person named in the IX (9th) Section . . . the whole of my Property thus deposited & falling in, & accumulated in the hands of said 'Pennsylvania Company'—be disposed of as follows

(1st) one third of it (1/3) to be paid to the Managers or Directors of the Pennsylvania Hospital (on Pine St.) in Philadelphia and to the Managers or Directors of the Massachusetts General Hospital in Boston, to be used by them for the establishment of a Hospital of such a character & in such a place as may seem to them most desirable: (2nd) one third (1/3) of said property to be paid to the President of Harvard University in Cambridge Mass:—to the President of Yale College in Connecticut—to the Secretary of the Smith-

sonian Institute at Washington D. C. and to Alexander Mercer Biddle, Alexander Mercer King, and Philip Mercer Rhinelander should they or either of them then be alive—to be used by them for the establishment of Scholarships or Foundations in such Colleges as they may select for the benefit of such poor students as have passed thro: some of the Public Schools with the best reputation for character & ability: (3rd) one third (1/3) of said property to go to such works of Religion or Benevolence as my Executors after full consideration shall select."

The last survivor of the life beneficiaries mentioned in section IX died on March 2, 1938 so that the trust created by section X is now distributable; and the complainant as trustee, in order to make a proper final distribution thereof, has brought this bill of complaint for construction of the will and for certain instructions relating thereto. The last portion of the residue mentioned in section X, namely, one third to go to works of religion or benevolence selected by the executors, is not in question in these proceedings. The questions propounded relate only to the first and second thirds of the residue to be divided and distributed in accordance with the corresponding provisions of section X of the will as above set forth.

The first question becomes necessary because the trustee desires to be instructed as to the proper persons to whom it should pay over the first third of the residue in accordance with the first portion of section X of the will. The particular question involved is whether the words "the Managers or Directors of the Massachusetts General Hospital in Boston", appearing therein, were intended to mean the *corporation* known as "the Massachusetts General Hospital", or those *persons* who, on March 2, 1938, or at the date for distribution, were the *trustees* of the Massachusetts General Hospital in Boston.

We are of the opinion that these words of description appearing in section X of the will should be construed as

meaning *the corporation* known as the Massachusetts General Hospital, which was at the time of the execution of the will and has ever since then been in existence. In *Pell v. Mercer,* 14 R. I. 412, one of the questions before the court involved the construction of the same paragraph of this will, as it concerned the identification of "the Managers or Directors" of the "Pennsylvania Hospital". While a further element of misnomer relating to the location of that hospital also was present in that case, the court held that the *corporation* was there intended. Because of that opinion we see no reason for now holding that the words "the Managers or Directors" when applied to the Massachusetts General Hospital should be construed differently from the same words in the same sentence applying to the Pennsylvania Hospital.

Apparently the court and counsel in the earlier case assumed that the testator intended these words to designate the *corporation* known as the Massachusetts General Hospital, because that corporation filed its answer as an interested party, and was so accepted without objection throughout those proceedings. Therefore, in answer to the first question, we find that the testator intended that the complainant, as trustee, should pay over to the two hospital *corporations,* namely, The Contributors to the Pennsylvania Hospital in Philadelphia, and the Massachusetts General Hospital in Boston, the first one-third of the residue bequeathed in section X of the will, to be used nevertheless for the purposes set forth in that paragraph of the will.

The second question is prompted by representations of these two hospital corporations to the complainant as trustee that they propose to apply this portion of the residue, when received, in accordance with a certain plan set forth in the bill. Briefly that plan is to divide the fund equally between the two corporations to be used for the "establishment and maintenance of additional hospital facilities and

service or the augmenting of existing hospital facilities and service at each of their said present hospital plants . . . and that appropriate provision shall be made for coordination of such work . . . and for continual exchange of data and other information . . . between said two hospital corporations." The trustee therefore raises the question whether such a plan falls within the intention of the testator's will which directed the payment of this third of the residue to these hospitals "to be used by them for the establishment of a Hospital of such a character & in such a place as may seem to them most desirable."

It is contended for these hospitals that the testator's general intention, as ascertained from the whole will, was to have this portion of his estate go "to the permanent good benefit of men" leaving entirely to the discretionary judgment of the hospitals the particular method of applying the gift in "the most prudent economical and effectual manner." They also contend that the literal meaning of the language used in section X leads to the same conclusion.

In support of these views they argue substantially that the above general intention, as quoted from Section XI, should govern any other specific intention in Section X and that only by their interpretation of the terms of Section X can the general intent be fulfilled; that the literal meaning of the words "for the establishment", that is, "to establish" is "to make firm or to augment" and they should be interpreted here as expressing an intent "to add to or augment" the facilities in their existing hospital plant or plants; that the testator was naturally looking into the future—a matter of many years to the death of the last surviving life beneficiary—and therefore intended to give practically an unlimited discretion to the hospitals to apply this gift; that practical considerations, especially in the light of present-day conditions, make their proposed plan "the most pru-

dent economical and effectual manner" of applying this gift for the permanent benefit of sick persons.

Treating the last argument first it may well be that the proposed plan of application would be wiser and more desirable in the light of present conditions. But our duty in this proceeding is not to settle upon a construction of the will merely because from present practical considerations it may appeal to us as more desirable. As we view it, our duty is to "throw our minds back to the time when it was made", as was said in *Pell* v. *Mercer, supra,* and to ascertain from the whole will the testator's paramount intent and to give it effect as far as reasonably possible without doing violence to established legal principles or the language used by the testator. *De Wolf* v. *Middleton,* 18 R. I. 810; *Dorrance* v. *Greene,* 41 R. I. 444; *Barker* v. *Ashley,* 58 R. I. 243; *Smith* v. *City of Providence,* 63 R. I. 333, 9 A. 2d 10.

With that in mind we may concede much of the arguments made for these hospitals and yet not reach the extreme position for which they contend. We concede that the verb "to establish" may have different meanings, including that suggested by the respondents, namely, to make firm—to augment. Webster's New International Dictionary, 2d ed. (unabridged) and the Century Dictionary. See *Novak* v. *Trustees of Orphans Home,* 123 Md. 161 and *Helmer* v. *Yardley,* 93 N. J. Eq. 661. But the other meaning, *viz.,* "to originate and secure the permanent existence of; to found; to institute; to create and regulate, as of a colony, state or other institution", is also stated in these authorities. And in the Maryland case, *supra,* the latter is given as a more common meaning. True, the meaning of the word "establish", as advanced by the respondents here, was adopted ultimately in that case because it clearly appeared to that court that such was the testator's intended meaning in the will, and also apparently because adoption of its common meaning would lead to a failure of the gift. These circum-

stances are not present in the instant cause; on the contrary, in our opinion, the common meaning, namely, "to found or to institute", is the more natural and probable one, and more nearly fits the intention of the testator as gathered from the will as a whole. Nor do we find anything in the will which requires the other interpretation.

If the testator's language had directed the fund to be used "for the establishment of their own hospitals" which he knew to be in existence, the construction for which respondents contend might be appropriate, as in the Maryland case, *supra*. There the court found other language in the will which clearly showed the testator's intent *not* to use the word "establish" in its common meaning. But here no such language appears. The testator did not mention any existing hospital as the object of his gift; he mentioned only *a hospital* to be selected and not two hospitals, thereby seeming to negative the idea of dividing the fund to serve these respondents or more than one hospital. Moreover, if he so intended, he could easily have made an outright gift to each of these hospitals. But he did not do so; nor did he divide or direct that the fund be divided.

Significantly his gift of the second third of the residue to five designated persons to be used for the establishment of *scholarships* or *foundations* in *colleges*, as they might select, indicates that he had in mind one formula for dividing a fund between several beneficiaries; and he did so there under the same general form of expression, "for the establishment of Scholarships or Foundations", not a scholarship or a foundation in a college to be selected.

These and other circumstances appearing in the will as a whole make it difficult to say that the words of gift used in section X were clearly intended to be understood otherwise than in their common meaning.

But the hospital respondents argue that the testator, looking necessarily to the future, expressed in section XI a gen-

eral intention to give them entire discretion to determine as of this time "the most prudent economical and effectual manner" of applying this gift; and that such general intention should govern any special intention otherwise stated. We find no necessary inconsistency between that construction of his intent and the one which gives full effect to the particular words used in section X as we have interpreted them. A hospital could be established, *i. e.,* instituted or founded, and yet have these corporations charged with the duty of seeing that there was no imprudent, wasteful or ineffectual expenditures in the size, character, operation, or location of the hospital to be founded.

The respondents further argue that the testator would probably not have intended to found a hospital without also providing some endowment or means for its support. We cannot agree that such result necessarily follows from our construction of his own language. The purpose of charging them, in section XI of the will, with a duty to determine "the most prudent economical and effectual manner" of applying the gift, seems to us to carry with it the implication that the testator felt that they could be depended upon *not* to devote all of the money—now over a million dollars—to the mere construction of a building, or even to a building and equipment.

We read no requirement in the will that the hospital intended by the testator must be such a large, general or costly one. Conceivably he may have intended to establish only a small hospital of a type and in a location where it was most needed, but one that was a complete, concrete entity or unit, —one which would devote itself intensively, for example, to some particular treatment or hospital service in connection with maternity cases, or such ailments as cancer; mental and nervous diseases; infantile paralysis; tuberculosis, and the like. Such a separate hospital might not require an elaborate or expensive building—might even be housed in an ex-

isting building—and thus would leave a considerable sum to be used as an endowment for all or part of its maintenance.

After consideration of the whole will, we think that the more reasonable interpretation of the testator's language is that he intended to establish, that is, to found, a hospital where it would bestow the greatest benefits in treatment of the poor and needy sick; and that he relied upon these respondent hospitals, because of their greater knowledge and experience, to assist him in effectuating that purpose by having them determine the most desirable character and location of such a hospital.

Accordingly we are of the opinion that the testamentary intent will be more reasonably carried out if the first third of the residue described in section X is paid over by the complainant to these respondent hospital corporations, provided that their corporate powers permit them to receive it, to be transmitted by them to a new charitable corporation having suitable powers to receive and to administer such fund for the establishment of a hospital, in accordance with the will as above interpreted.

The third question broadly expressed is whether the complainant should pay over the second third of the residue described in section X to the five designated persons "to be used by them for the establishment of Scholarships or Foundations in such Colleges as they may select for the benefit of such poor students as have passed thro: some of the Public Schools with the best reputation for character & ability", or whether they should pay it directly to certain colleges selected by those five persons, permitting the latter to carry out all of the remaining obligations under the will. The designated respondents in general contend that the fund was intended to be used and not to be held by them; and that it is therefore not a true trust but rather a gift to a

charitable purpose to be selected by this group. According to their proposed plan the money would be paid by the complainant not to them but directly and in varying proportions to certain colleges as selected by them, to be used by the latter for the establishment of scholarships or foundations. In other words, the persons designated by the testator in the will to receive the money would divest themselves of all responsibility in relation to this fund without ever having received it.

We think that the answer of the court in *Pell* v. *Mercer, supra,* disposed of this question and contention. In that opinion, at page 448, the court held: "We think, therefore, that one third of said *residuum* should, when the time comes for paying it, *be paid to* the president of the corporation in Cambridge, Massachusetts, denominated 'The President and Fellows of Harvard College;' to the president of the corporation in Connecticut, known as 'The President and Fellows of Yale College;' and to the secretary of the corporation at Washington, D. C. known as the 'Smithsonian Institution,' and to such of the three other persons named as are then alive, if either of them be then alive . . . ." (italics ours) In view of this language, we do not think that the plan of payment as proposed to the complainant comes entirely within the terms of the will and the expressed intent of the testator. Accordingly we think that the complainant should pay over the second third of the residue in question to the respondents as described in *Pell* v. *Mercer, supra,* to be used by them for the purposes set forth in the will.

However, we are of the opinion that these designated respondents, if they desire, may discharge their duties as *quasi* trustees by serving as a proper conduit through which to divide and transmit the fund to selected colleges for the purposes set forth in the will. To do so, they should at least approve the basic provisions for the scholarships or foundations and see to it that these are properly set up and safe-

guarded, to the end that "such poor students as have passed thro: some of the Public Schools with the best reputation for character & ability" may have opportunities for a college education, as indicated by the testator in his will. Such scholarships or foundations need not be uniform but may perhaps vary in number, amounts and conditions to suit the particular colleges and approved needs. The subsequent financial and other administration of the funds, if set up to be managed separately, as approved by these respondents, may be entrusted to the proper officials in the respective colleges, understanding always that the funds so awarded are to be used for the purposes and in the manner set forth in the will.

On December 6, 1939, the parties may present to this court a form of decree, in accordance with this opinion, to be ordered to be entered in the superior court.

*Drinker, Riddle & Reath, Saul, Ewing, Remick & Saul,* all of Philadelphia, Pa., and *Sheffield & Harvey, & William R. Harvey,* of Newport, for complainant.

*John Abbott,* of Philadelphia, Pa., *Frederick H. Wiggin,* of New Haven, Conn., and *Hinckley, Allen, Tillinghast & Wheeler, Frank L. Hinckley, Frederick W. Tillinghast, Roger T. Clapp,* all of Providence, for respondent trustees.