JAMES TILLINGHAST, Assignee, v. NICHOLAS H. BRADFORD, Trustee, & another.

Where a debtor had, under his father's will, an equitable estate for life in certain real property, with power to dispose of the remainder in fee by will, the remainder, in default of such disposition, to be conveyed by the trustee to the debtor's heirs at law; *Held,* That the debtor's interest passed to his assignee in insolvency, under the form of conveyance prescribed by the statute for insolvents, notwithstanding a clause in the will against anticipation and alienation of the rents and profits during the debtor's life; there being no limitation over of the estate, in the event of alienation, or seizure of it for his debts.

The words "all my estate both real and personal not exempt from attachment by law," prescribed by the insolvent law as descriptive of what shall pass by the insolvent's deed to his assignee, except from the deed, only such property, as is expressly exempted from attachment by the statute relating to that subject.

DEMURRER to a bill in equity, filed by the plaintiff as assignee, under the "poor debtor's act," of Hezekiah Sabin the younger, against him, and against Nicholas H. Bradford, trustee under the will of Hezekiah Sabin, Sen., of certain real estate situated in Westminster Street in Providence, held by said Bradford in trust for the benefit of said Hezekiah the younger.

The bill, in substance, set forth the will of Hezekiah Sabin, Sen., of the date of February 6, 1853, and his subsequent death; and it appeared, that in and by said will, the testator devised a certain undivided share of the real estate in question to Charles F. Tillinghast, Esq.—whose successor in the trust Bradford was stated to be,—"*In trust*, to hold the same, for the said trustee to receive the rents and profits thereof, and after paying therefrom all the taxes, repairs, insurance, and other charges thereon, to pay to my said son Hezekiah the net income thereof during his natural life, for his own use, and from and after his decease to convey the said portion of said real estate according to the provisions of the last will and testament of the said Hezekiah Sabin, Jr., and in default of such will, to his heirs at law;" and that after creating other trusts, in like terms, of his property, real and personal, to be administered by the same trustee for the benefit of his children, male and female, including said Hezekiah, Jr., the testator, in the 10th clause of his will, declared as follows: " Section 10th, I hereby declare it to be my will, that the payment of the rents, income, interest, or dividends, to be made by the trustee to my children in pursuance of the provisions of my will, shall be made to them from time to time, as the said rents, income, interest or dividends accrue or may be received, and not in the way of anticipation, nor to their assigns, and that such payments shall be for their sole and separate use." The bill further set forth, that whilst said Hezekiah Sabin, Jr., was entitled as aforesaid under the will of his father—being in danger of being committed to jail in a certain execution for rent, then out against him—he cited his creditors to appear to show cause why he should not take the poor debtor's oath; and, as the condition upon which he was entitled to be admitted to take the same, on the 24th

day of November, 1856, executed to the plaintiff in fee an assignment of " all my (his) estate, both real and personal, not exempt from attachment by law; to have and to hold the same in trust for the benefit of all my creditors in proportion to their respective demands."

The bill prayed, that Bradford might be decreed to pay the rents and profits of the trust property, as the same might accrue, to the plaintiff, for the benefit of the creditors of Hezekiah Sabin the younger, and that the plaintiff might be decreed to be entitled to receive the same for such purpose; that Bradford might be enjoined from paying over such rents and profits to Hezekiah Sabin the younger, or to others, and for further relief.

*Currey,* in support of the demurrer:—

The questions in this case are—*First,* whether the testator had a right, by law, to secure the income, during life, of the rents and profits of certain real estate, to the *cestui que trust* named in the bill, against alienation, by assignment of the *cestui que trust,* on his taking the poor debtor's oath; and *second,* whether, if he had that right, he has sufficiently exercised it by this will.

I. With respect to the first point, it must be admitted, that the restraint against alienation, contained in the 10th article of the will, would have been valid, if the testator had annexed to alienation the penalty of cesser, forfeiture, or limitation over. 1 Jarm. on Wills, 823; *Churchill* v. *Marks,* 1 Collyer, 441; S. C. 28 Eng. Cond. Ch. R. 441; *Graves* v. *Dolphin,* 1 Sim. 66; S. C. 2 Eng. Cond. Ch. R. 67. The right to impose the penalty of cesser, forfeiture, or limitation over, arises from the dominion of every man over his own property, as well in his final disposition of it, as in present enjoyment. In testamentary devises this dominion extends, by the common law, to any extent within the rule against perpetuities. *Thellusson* v. *Woodford,* 4 Ves. 227; *Ruston's Ex'rs* v. *Ruston,* 2 Dall. 244; *Findlay* v. *Riddle,* 3 Binn. 139. This principle of the common law is applicable also to grants and conveyances of estates by deed in the nature of bargain and sale. *Doe* d. *Mitchinson* v. *Carter,* 8 D. & E. 57. The reason and policy of the law have settled these principles as final,—regarding, on the one hand, the rights of prop-

erty in individuals, and, on the other hand, the greater rights of society.

Creditors can have no interest in the annexation of cesser, forfeiture, or limitation over, on alienation. The estate of their debtor only passes farther from them in such cases. Creditors are not defrauded by not having the power to reach this species of estate, reserved by the bounty of the donor for the maintenance of the poor debtor. They always know, or may know, that such reserved income is not a fund for credit. *Fisher* v. *Taylor*, 2 Rawle, 33.

The English cases which decide, that the interest or estate of the *cestui que trust* of an income for life *held in trust* will pass to an assignee in bankruptcy, derive their character from the English bankrupt and insolvent laws. 1 Jarm. on Wills, 816, 817; *Graves* v. *Dolphin*, 1 Sim. 66; S. C. 2 Eng. Cond. Ch. R. 67; *Brandon* v. *Robinson*, 18 Ves. 427. The reasoning of the English courts in all the cases on this subject appears to be drawn,—either, first, from the statutory effect of the committing an act of bankruptcy; or, secondly, from the principle, that in obtaining a discharge from all his debts the bankrupt shall surrender every species of his property. The English decisions are in fact founded altogether on these two ideas. The bankrupt pays all, and surrenders all; whereas the poor debtor, under our law, is discharged from no debt, and obtains only an exemption from personal restraint, in the particular case. The only American case, adopting the English doctrine, is *Hallett* v. *Thompson*, 5 Paige, 583; and the devise in that case was perfectly distinguishable from the present. That case did not require any affirmance of the English cases cited in the opinion of the court. The more humane policy of the statute law of New York expressly admits of inalienable trusts for the maintenance of the unfortunate. 4 Kent, (5th ed.) 310. This court is not bound by English decisions upon the meaning and effect of acts of parliament. Decisions in such cases are not evidence of the common law, nor any sure guide to the meaning and effect of acts of the legislature of this state.

But admitting the authority of the English decisions in analogous cases in this court, it is yet contended, that the distinc-

tion which our law makes between the assignment required of a poor debtor, and that of a general insolvent, clearly takes this case out of the application of those decisions. Poor Debtors' Assignments, Rev. Stats. ch. 198, §§ 10, 28 ; Insolvents' Assignments, Ib. ch. 200, § 11. The insolvents' assignment embraces equitable interests in express terms. The poor debtors' assignment reserves to the debtor, property and estate exempt from attachment by law.

Equitable estates are exempt from attachment by law, and are therefore, by necessary implication, excepted and reserved for the maintenance of the poor debtor. *Lowry* v. *Wright*, 15 Ill. 95 ; *Fisher* v. *Taylor*, 2 Rawle, 36.

II. With respect to the second point, it must be admitted, that the testator has sufficiently expressed his intent upon the question at issue in the cause. No purpose could be more clearly or fully expressed than the purpose of making this income inalienable during the life of the *cestui que trust.* See 10th article of the will. To defeat this purpose would be to make for the testator a new will. *Cooper* v. *Wyatt*, 5 Madd. 297 ; *Fisher* v. *Taylor*, 2 Rawle, 37 ; *Nevil* v. *Saunders*, 1 Verm. 415. According, then, to the 10th article of the will, there is no title in the *cestui que trust* to the *principal;* and no title to the income *before* or *while* accruing. There is no title to the income in gross when it has accrued ; the taxes, repairs, insurance, and other charges are to be first paid. For this purpose the title remains in the trustee. Even when these are paid, there is no title to the *net* income in the *cestui;* his estate, if it may be called an estate, is a naked right to receive it, when paid over from time to time, for his sole use. The *cestui* has no estate in the income in *specie*, net or gross, in the nature of ownership. It is merely a right to demand of the trustee, from time to time, a sum of money equal to the then net amount of income in his hands ; and a right, expressly, not assignable.

Upon the question of costs, should the court sustain the bill, see *Younghusband* v. *Gisborne*, 1 Collyer, Ch. R. 400 ; S. C. 28 Eng. Cond. Ch. R. 402, n. 2. This trustee, in the doubtful state of the law upon the question in the cause, and without any decided case in this state upon the question, could do no other-

18 *

wise than submit the question to the court, by his demurrer to the bill. The costs of this defence ought to be paid out of the fund, let the decision be either way.

*Tillinghast* and *Bradley*, for the plaintiff:—

I. The direction against alienation is void. *Brandon* v. *Robinson,* 18 Ves. Jr. 429; *Rochford* v. *Hackman,* 10 Eng. L. & Eq. R. 64; Jarm. on Wills, vol. 1, (Perkins's ed.) 698. The law favors creditors, and therefore will not permit property to be so limited, as to remain in a man for life, free from the incidents of property, and not subject to his debts. *Brandon* v. *Robinson,* supra; *Graves* v. *Dolphin,* 1 Sim. 66; *Green* v. *Spicer,* 1 Russ. & Myl. 395; *Ex parte Percy, re Roberts,* 1 Myl. & K. 4; *Lear* v. *Leggett,* 2 Sim. 479; *Younghusband* v. *Gisborne,* 1 Collyer, Ch. R. 400; S. C. 28 Eng. Cond. Ch. R. 400; *Ripon* v. *Norton,* 2 Beav. 63. The doctrine of the English cases is recognized here. 4 Kent, Com. (5th ed.) 310, N. C.; *Hallet* v. *Thompson,* 5 Paige, 583; *Hammersley* v. *Smith,* 4 Whart. (Pa.) 126. The cases show, that this interest is a vested life estate which the *cestui que trust* could convey or assign, and therefore will pass to assignees in bankruptcy or insolvency; and, upon the same principle, it will pass to the assignee here, who, under our statute is a trustee for creditors, who themselves have no remedy against the property of the debtor; and herein, he stands on the same footing as assignees in bankruptcy or insolvency. Digest, 1844, p. 166; Id. 212, § 8; *Carr* v. *Hilton,* 1 Curtis, 230. The right of the assignees in bankruptcy or insolvency, in England, to an interest like the present, is derived from the *jus disponendi* of the *cestui que trust,* notwithstanding restraint upon alienation, as in this case. *Vide* cases *supra;* 1 Jarm. on Wills, 816, 817. In England, a distinction has sometimes obtained between a voluntary and an involuntary alienation, where the restriction was coupled with a proviso for forfeiture; but the necessity for such a distinction does not arise here, as the will in this case contains no such proviso. The question here is, whether this restriction upon alienation is not void; and it certainly is. *Brandon* v. *Robinson; Rochford* v. *Hackman,* et seq. supra.

The case of *Wyatt* v. *Cooper* does not support the view, that

Tillinghast *v.* Bradford & another.

the language of the 10th section of this will makes the interest personal to the *cestui que trust. Lear* v. *Leggett,* 2 Sim. 479. The case of *Doe* d. *Mitchinson* v. *Carter,* 8 T. R. 61, has no application here. What is there said by Lord Kenyon is founded entirely upon the maxim, *modus et conventio vincunt legem,* which is very different from a gift to a man for life, and then saying he shall not part with it.

II. The interest in question is conveyed by the words, "all my estate, both real and personal, not exempt from attachment by law," which are sufficiently comprehensive to include all the debtor's available property, whether legal or equitable. *Cover. dale* v. *Aldrich,* 19 Pick. 395 ; Co. Litt. 345 *a; Bayard* v. *Hoffman,* 4 Johns. Ch. R. 450. The assignor clearly intended to convey all his available property for the benefit of his creditors, and the court will follow the intention. *Ringer* v. *Cann,* 3 M. & W. 342; *West* v. *Steward,* 14 Ib. 46; *McIvaine* v. *Martin,* 12 S. & R. 269; *Ingell* v. *Mooney,* 2 Pick. 362. The assignment was executed on the 24th Nov. 1856, in pursuance of the act (Dig. 1844, p. 166) ; and there is no difference between the nature of the assignment there required and the one required by the insolvent act, (Dig. 1844, p. 212, § 8,) except, that the latter is voluntary, while the former is not. Can it be contended that this interest would not have passed under a similar assignment executed under the insolvent act ? The object of both statutes, undoubtedly, is, to secure the property of the debtor, of every kind, for the payment of his debts.

AMES, C. J. The demurrer to this bill is attempted to be supported, substantially, upon two grounds : *First,* that Hezekiah Sabin, Jr., had not such an equitable interest, under his father's will, in the trust property in question, that he could aliene the same to the plaintiff in trust for his creditors; and, *second,* that in legal intendment he did not, by the assignment executed by him under the poor debtor's act, aliene the same to the plaintiff, upon such trust.

The nature of the debtor's interest in the trust property, under his father's will, was an equitable estate for life, with a power of disposing of the remainder in fee by will; in default of such disposition, such remainder to be conveyed to

Tillinghast v. Bradford & another.

his heirs at law; there being also a clause in the will against anticipation and alienation of the rents and profits during the debtor's life. It is quite clear, that it was the intention of the testator to make an alimentary provision for his son during life, which should give him all the advantages of an estate in fee, without the legal incidents of such an estate,—alienability, unless by will, and subjectiveness to the payment of the son's debts. Such restraints, however, are so opposed to the nature of property,— and, so far as subjectiveness to debts is concerned, to the honest policy of the law,—as to be totally void, unless, indeed, which is not the case here, in the event of its being attempted to be aliened, or seized for debts, it is given over by the testator to some one else. This has been the settled doctrine of a court of chancery, at least since *Brandon* v. *Robinson*, 18 Ves. 429; and in application to such a case as this, is so honest and just, that we would not change it if we could. Certainly, no man *should* have an estate to live on, but not an estate to pay his debts with. Certainly, property available for the purposes of pleasure or profit, should be also amenable to the demands of justice.

The other ground of demurrer taken, is equally without support. The difference between the prescribed terms of the assignment of an insolvent and a poor debtor, remarked upon by the counsel for the respondent, is verbal merely : the words " all my estate, both real and personal, not exempt from attachment by law," prescribed for the latter as descriptive of the subject of conveyance, being quite ample enough to include every equitable as well as legal interest in the real or personal property of the assigning debtor. The property excepted from the assignment by the words " exempt from attachment," is clearly that expressly exempted from attachment by our statute relating to that subject. It can hardly be supposed that the general assembly intended that a man should be admitted to the poor debtor's oath, whilst rolling in the wealth of a trust estate, applicable by law to the payment of his debts.

It has been suggested, that if the points taken on demurrer be decided against the respondents, they will decline to answer over, and will submit to the decree asked; and we are requested,

under such circumstances, by the respondent, Bradford, to allow him his costs and necessary expenses of defence out of the trust fund. As this is the first time that this question has come before the court, and the trustee has taken the speediest mode of bringing the question of his duty, under the circumstances, to a decision, we think it but reasonable, that submitting now to the decree asked by the plaintiff, he should be made whole out of the trust fund for his costs, and for necessary expenses in endeavoring to keep it applied according to the will of his testator.

*Demurrer overruled.*