RHODE ISLAND HOSPITAL TRUST COMPANY, *Tr. vs.*
FRED A. OTIS, *Adm'r et al.*

JULY 21, 1950.

PRESENT: Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a bill in equity for the construction of the will of Joseph Cooke Smith, late of Providence, deceased. After the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.

The testator died in Switzerland on June 9, 1942 leaving his widow, Annie Melicent Smith, surviving him. He made provision for her in paragraph Fourth of his will in which he set up a trust of his residuary estate. The pertinent portion of such paragraph for our purposes here reads as follows: "I further authorize, direct and empower said trustee * * * to pay the balance of said income, dividends and profits to my wife, Annie Melicent Smith, so long as she shall live." The same paragraph provided further that upon the death of his wife "said trustee shall stand seized and possessed of said residuary estate including any undisbursed income in trust." By subparagraph B of such paragraph Fourth the testator directed the trustee thereafter to "pay over the balance of said residuary estate to St. Joseph's Hospital, a corporation created by the General Assembly of the State of Rhode Island * * *."

While the testator's estate was in course of administration in the probate court of Providence Annie Melicent Smith died in Switzerland on March 23, 1943 and Fred A. Otis was later appointed administrator of her estate in Rhode Island. From the date of the testator's death to the date of his wife's death the trustee had collected a substantial amount of income but due to the great difficulty in transmitting private funds to Europe during the recent World War which was then in progress it had been able to pay over to her only a small portion of such income leaving by far the greater part thereof unpaid in the hands of the

trustee. A question thereafter arose between the hospital and the administrator as to whom such undisbursed income should be paid.

The Rhode Island Hospital Trust Company as the trustee under the will brought the instant bill of complaint for the construction of the will to determine "whether under the provisions of the fourth paragraph of said will that portion of the net income from the Estate of Joseph Cooke Smith for the period between the death of the Testator on June 9, 1942 and the death of Annie Melicent Smith on March 23, 1943, which was not paid over to her or applied for her benefit during her life should now be paid to Fred A. Otis, as administrator of her estate in Rhode Island or should be paid to St. Joseph's Hospital, the legatee entitled to receive the remainder of the residuary estate after the death of the said Annie Melicent Smith." The only respondents named in the bill are the administrator and the hospital. They are the real adversaries here, as the complainant trustee in a cause of this kind is deemed to be neutral and, therefore, ordinarily has neither the right nor the duty to urge any particular view upon the court.

The administrator contends that the balance of income in the hands of the trustee at the death of Mrs. Smith vested in her even though it was not paid to her by the trustee. He further argues that the testator did not intend by the use of the words "undisbursed income" to divest her of such income in the event that the trustee had not paid it over to her in her lifetime, but that he intended by those words to refer only to income accruing during the period between her death and the distribution of the residuary estate to the hospital. In support of his position he points out that the law does not favor an inference of intention to accumulate income, although he concedes that accumulation is allowed if it is the plain intention of the testator. However, he insists that the testamentary language under construction here neither expresses nor necessarily implies such an intention.

The hospital contends that we have here a clear and definite direction of the testator that the trustee "shall stand seized and possessed of said residuary estate including any undisbursed income in trust." It argues that such language means exactly what it says and that the words "any undisbursed income" in particular are clear, comprehensive and unambiguous. Such words, it further argues, submit to only one reasonable construction, namely, that they refer to all income received by the trustee and not paid out upon the death of Mrs. Smith.

The cardinal rule in the construction of wills is to find the intention of the testator. Unless it violates some rule of law such intention governs and will be given effect. First of all we seek the testator's intention in the language which he has employed to express it. *Bliven* v. *Borden,* 56 R. I. 283. If the language of any particular dispositive clause is plain and certain and does not conflict with any other clause of the will there is no need to look elsewhere in the will or beyond it for aid in construing such clause. *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169. As we said in that case, it is the written expression of the testator taken in its natural sense and use that must control. The test is what did his words mean to him. It will be presumed that he intended them to convey their ordinary meaning unless it is clear from other language in the will that he has used them in a special, limited sense.

After carefully examining the instant will we find that the testator's authorization of and direction to the trustee in paragraph Fourth to pay the income to Mrs. Smith "so long as she shall live" and thereafter to stand seized and possessed of the residuary estate "including any undisbursed income" for the benefit of and to pay over to St. Joseph's Hospital is not in conflict with any other provision of the will. We further find that such dispositive language is plain and unambiguous. There is no indication in the will that the testator used the expression "any undisbursed income" in a special or limited sense. "Undisbursed," as

far as we are aware, has but one ordinary, natural meaning, namely, "not paid out." Finally the testamentary direction, if found favorable to the hospital, does not violate any rule of law in this state merely because it results in an accumulation of income.

The administrator relies on certain New York cases, among others, in which the court there construed favorably to the life tenant rather plain language directing the trustee to pay the remainderman income remaining in its hands at the death of the life tenant. These cases, in our opinion, are not persuasive because the law in New York, unlike the law here, forbids accumulation of income. The following excerpt from the opinion in *Matter of Keogh,* 112 App. Div. 414, one of such cases relied on by the administrator, well illustrates the effect which that rule of law had on the court's construction of the testamentary language there under consideration: "Although the will provided for semi-annual payments of income, in the absence of anything to the contrary, it must be assumed that the testator intended the immediate vesting in the life beneficiary of all income upon its being paid in. (*Smith* v. *Parsons,* 146 N. Y. 116.) The postponement of such vesting, for however short a time, would offend the statutes against unlawful accumulations." Also in *Matter of Dexter,* 134 Misc. 195, the same rule of law played a major part in the surrogate's opinion in awarding such income to the life tenant's estate because a contrary construction would result in an invalid accumulation of income.

Since there is no similar rule of law in this state to inhibit a construction of the instant will in accordance with its plain language we must decide this cause in the light of the rules of construction hereinbefore set out. In doing so we need not refer to authorities outside this jurisdiction whether favorable or opposed to the construction which we find the distinctive and different language of the will before us requires. The fact is that cases construing other wills are often of little value unless the testamentary

language under consideration imports a special meaning in the technology of the law. In other words, as it has been well said, "No will has a brother." However, we append here the following authorities outside of New York which are principally relied on by the administrator. *Commercial Trust Co. of New Jersey* v. *Spiegelberg,* 117 N. J. Eq. 171; *Horlick* v. *Sidley,* 241 Wis. 81; *Yates's Estate,* 281 Pa. 178.

To recapitulate, we perceive no ambiguity in this will. The words "any undisbursed income," when viewed in the context of the clause in which the testator employs it, can mean only one thing, income not actually paid to Mrs. Smith. We see nothing inconsistent in the testator directing his trustee to pay her the balance of income and also providing that any income not paid at her death should be part of the residuary estate. Since his direction to the trustee was to pay her the balance of income only "so long as she shall live" it was reasonable for him to foresee and provide against the event that his wife might die at a time when the trustee was not ready "to pay the balance of said income, dividends and profits" after deducting expenses, taxes and charges. By providing that "any undisbursed income" should become part of the residuary estate he effectively avoided the possibility of anyone coming into the enjoyment of any part of his estate except the chief objects of his bounty, his wife so long as she was living and the hospital. Since such was his dominant intention a construction of his language that is consistent with it is desirable and should be adopted. That the fortuitous event of war with its restrictions on foreign exchange had the effect of depriving Mrs. Smith of a substantial amount of income which the will made available for her cannot be allowed to affect its construction.

We may add that we have given considerable thought to the administrator's contention that the words "any undisbursed income" were intended to refer only to income accruing during the period between the death of the widow and the distribution of the principal to the hospital. This

is a limited and special construction of the testator's words. Certainly it is not their ordinary and natural meaning. We have been unable to find anything in the will that lends support to so narrow a construction. It appears to us that if the testator had intended such a limited meaning he would not have used so comprehensive an expression as "any undisbursed income." The idea for this contention may have come from *Matter of Keogh, supra,* where it was said: "As the learned surrogate remarked, those words may well refer to the time of distribution, for obviously the testator must have known that some time must elapse between the death of said John J. Jones and said distribution * * *." Whatever merit that observation may have had for the New York court, we are of the opinion that it has none here and must be rejected.

Our opinion, therefore, is that the income in question here became a part of the residuary estate of the testator after the death of Annie Melicent Smith and should be paid over to the residuary legatee, St. Joseph's Hospital, a corporation created by the general assembly of the state of Rhode Island, maintaining a hospital in the city of Providence at the time of the distribution of this legacy.

The parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Tillinghast, Collins & Tanner, Russell P. Jones, Westcote H. Chesebrough,* for complainant.

*Fred A. Otis, John C. Knowles,* for respondent administrator.

*Reverend Charles J. Mahoney,* for respondent Saint Joseph's Hospital.