HOWARD L. CARPENTER *et al., Trs. vs.*
LELAND B. SMITH *et al.*

MAY 22, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is a bill in equity for a construction of the will of Albert Walker, late of the city of Providence, deceased, and for instructions to the trustees thereunder relative to the distribution of certain unused income derived from a residuary trust. The complainants are the surviving trustees under that will. The respondents are of age and are all the persons who have or might possibly have any interest in the residuary estate. Through their attorneys they filed answers joining in the prayers of the bill and then testimony was taken in the superior court. When the cause was ready for hearing for final decree it was certified to this court for determination in accordance with general laws 1938, chapter 545, §7.

The testator Albert Walker died September 15, 1904 and his will, which was executed September 14, 1903, was duly probated in Providence. At the time of the execution of the will the testator's wife, his parents, brothers and sisters, and all his children had deceased excepting only his daughter Mabel Walker, who was then thirty years of age. She had no mental or other extensive disability aside from the fact that she was severely handicapped from childhood by deafness resulting from scarlet fever. Because of such deafness her education in school was shortened and her facility of speech was thereby greatly retarded. As stated, at the

testator's death Mabel Walker was his *only* surviving child and heir at law. She died single and intestate on March 24, 1948, and the administrator of her estate is one of the respondents. The other respondents include the heirs at law and next of kin of Mabel, the remaindermen named in the residuary trust under the will, and the representatives of certain deceased remaindermen.

The will of Albert Walker contains eleven clauses. In the first nine the testator made provisions for the payment of debts and of eight small legacies. The tenth clause disposes of all the residue of his estate in trust for Mabel's benefit, and the eleventh nominates as sole executor one of the three persons named as residuary trustees. The pertinent part of the tenth or residuary clause, which is particularly in issue here, reads as follows:

"Tenth, All the rest and residue of my estate both real and personal and wheresoever the same may be situated of which I shall die seized and possessed, *I give, devise and bequeath* to Frank A. Balcom, of Mansfield, Massachusetts, Howard L. Carpenter, of Providence, Rhode Island and Ida Frances Drown, of Providence, Rhode Island, with power to sell, invest and reinvest but without liability for loss on such investments, to them and their heirs, but *in strict trust nevertheless for the benefit of my daughter, Mabel Walker, upon the following terms and conditions*:

That my said trustees *shall use the income from said trust estate and so much of the principal of the same as they may deem necessary* for the comfortable support of my said daughter during her life. They shall provide my said daughter with a good home and maintainance including a competent housekeeper in the house I have built and provided for her use at No. 167 Medway Street, Providence, Rhode Island. In addition there to my said trustees shall offer to Hattie Maria Drown of Providence, Rhode Island, and Ida Frances Drown, of Providence, Rhode Island, a home and board with my said daughter, Mabel Walker, in my house aforesaid at No. 167 Medway Street, on condition that said

Hattie Maria Drown and Ida Frances Drown render my said daughter such care and companionship as they may be able to do and should said Hattie Maria Drown and Ida Frances Drown, or either of them, survive my said daughter, this offer having been accepted and the conditions fulfilled by them, I direct my said trustees to allow them the free use of my said house and furniture at said No. 167 Medway Street as long as either of them may live without expense to them in the care and preservation of said house. In the event of the above arrangement, to wit, for the companionship and association between my said daughter, Mabel Walker, and said Hattie Maria Drown and Ida Frances Drown becoming unsatisfactory to my said daughter, the portion of this will relating to the continued support and maintainance of said Hattie Maria Drown and Ida Frances Drown shall cease and be of no effect.

Upon the death of my said daughter, Mabel Walker, if she shall leave any issue, I give, devise and bequeath to her issue including the children of any deceased child per stirpes absolutely in fee simple, seven eights (7/8) of my said trust estate which shall remain after the death of my said daughter, but if my said daughter shall die leaving no issue and shall also be at the time of her death single and sole, I direct that said seven eighths of said trust estate shall be disposed of as follows: * * *." (italics ours)

In the omitted part above indicated fractional gifts over to several remaindermen, including two of the trustees and the wife of the third, are set forth, and the clause then continues as follows:

"And I direct my said trustees to hold the remaining one eighth (1/8) part and *to use so much thereof either of the principal or interest as they may deem necessary* for the maintainance of my said house at No. 167 Medway Street, Providence, Rhode Island, during the lives of Hattie Maria Drown and Ida Frances Drown or the longest liver of them, for the payment of taxes, repairs, insurance, water rates and other necessary expenses, and upon the death of the survivor of said Hattie Maria Drown and Ida Frances Drown, my said trustees

> *shall divide among those who were my legal representatives at the time of my decease and their heirs,* per stirpes, share and share alike, said remaining one eighth (⅛) part of said trust estate *and its accumulations, if any."* (italics ours)

This will was before us for interpretation on other issues in a previous case. *Carpenter* v. *Smith,* 77 R. I. 358, 75 A.2d 413. The question now presented involves the construction of a part of the testator's trust of the residue of his estate and is stated as follows: "Under the terms of the Tenth clause of said will of Albert Walker what disposition should the complainants make of the income of said trust estate with the accumulations thereof in their hands and possession at the time of the death of said Mabel Walker over and above the portion of said income theretofore expended for said Mabel Walker's comfortable support and for the other purposes of said trust?"

All the respondents concede that the paramount intent of the testator, as clearly evidenced by the plan and provisions of the whole will, was the welfare, comfortable support, and security of his only daughter and that all other dispositions were entirely secondary to his overwhelming desire to make the whole residuary estate, if necessary, available for Mabel's benefit. They also agree that the testator's intent should be ascertained, if possible, from the language of the will itself and that such intent should be given effect unless contrary to some established rule of law. Moreover there is no dispute as to other well-known rules of construction which are aids to the proper consideration of a will and which permit recourse to the evidence if there is a latent ambiguity. In the circumstances, therefore, it is unnecessary to restate those rules, many of which were indicated and applied in our previous opinion in *Carpenter* v. *Smith, supra,* and in *Rhode Island Hospital Trust Co.* v. *Thomas,* 73 R. I. 277. However, notwithstanding such apparent agreement the two groups, in urging an answer to the above question, arrive at completely opposite conclusions.

In our judgment the great difficulty underlying this conflict is due primarily, if not entirely, to the fact that each group appears to adopt a different approach to the construction of the language used by the testator to express his intended dispositions. The respondents associated with the administrator of Mabel's estate view the will as of the date it was executed and project the testator's actual language against the background of circumstances then existing and known especially to him from his own experience. In the light of such peculiar facts they examine the language of the residuary clause, in accordance with the pattern of the whole will and with established rules of construction, to ascertain the testator's intent and to determine whether the intent thus disclosed is inconsistent with any other pertinent provision of the will or any rule of law.

Applying that formula, such respondents contend that the language of the trust is clear and unambiguous; that such language, if considered grammatically and according to the ordinary meaning of the words used, especially in the light of then known circumstances, clearly discloses the testator's intent to give no discretion whatsoever to the trustees to determine or limit the amount of income to be used for Mabel's comfortable support, no power to cut down her beneficial interest in all the income of said trust, and no authority to the trustees either to accumulate income from this trust for a gift over or to include any accumulated or unused income as a part of the gift over of the principal of the trust estate to the remaindermen.

In short, according to their analysis the testator clearly intended Mabel to have in effect the equivalent of a vested equitable life estate in all the income of such residuary trust to be managed, expended, and cared for by the trustees but *solely* for her benefit. Any contrary conclusion, they argue, requires a rewriting of material parts of the will, the elimination therefrom of certain clear expressions, and the addition of others including authority and discretion to the trustees to accumulate income, limit Mabel's use of

income, and to aggrandize the remainder in which they had a personal interest.

On the other hand the remaindermen seem to approach the construction of the will from presently existing circumstances resulting largely from conditions and events which have happened since the death of the testator. Finding the trustees now in possession of a large amount of income from this trust, they apparently look backwards and attempt by rationalization to find in the language or plan of the will some implied meaning to justify from the beginning the trustees' asserted right to accumulate the income as part of the gift over, and to support generally their contention that the testator intended to give Mabel no gift and no vested interest or estate of any kind, but only a charge upon so much of the income from "one trust fund" as would be sufficient to provide for her comfortable support, a good home, care and companionship. According to their view the trustees in effect were given authority to determine the extent to which the income would be used for Mabel's care and comfortable support, and if at any time she were not satisfied therewith she had the right to sue in equity and have the court determine what amounted to her proper support under the will.

In our judgment the position taken by the first group led by the administrator of Mabel's estate conforms generally to the approach which has been adopted and confirmed by this court in the interpretation of wills. As early as 1884 there was occasion for the court, in *Pell* v. *Mercer,* 14 R. I. 412, 429, to consider the procedure to be adopted when seeking to discover by construction a testator's intent as expressed in the will. The proper approach in such a case was therein aptly and concisely summarized by the following statement: "It is our duty in construing the will to throw our minds back to the time when it was made." Since that time the principle has been confirmed and applied consistently in this state. See among other cases *Pennsylvania Co. for Insurances on Lives and Granting Annuities* v. *Contributors to*

*Pennsylvania Hospital,* 63 R. I. 466, 472, and *Redding* v. *Rhode Island Hospital Trust Co.,* 67 R. I. 41, 47, both of which cite with approval the above quotation from *Pell* v. *Mercer, supra.*

Unless that principle is applied, the search for a testator's intent may become complicated or diverted by practical considerations arising mainly from events happening long after the testator had executed his will. Under the influence of such considerations the mind immediately begins to speculate as to what the testator would have done if he were now making his will, and then attempts to fit into the language used by him a conclusion reached from those later considerations. This tends either to import an ambiguity which is not suggested by the language of the testator, or to substitute a supposed intent, based upon presently existing conditions, for the testator's intent as disclosed by his language in the will which he made in the light of peculiar facts that were known to him.

Here if we start by noticing the large sum of unused income held for distribution, it is easy to fall into the error of *assuming* that the trustees must have had both the discretion to limit the use of the income for Mabel's comfortable support and also the authority to accumulate the unused portion thereof for the benefit of the gift over to the remaindermen, and then on those assumptions to seek some expressions in the will from which such an intent might be implied or confirmed. In our view unnecessary complications will be avoided if we treat the instant bill in equity as one brought, for example, within a year of the testator's death. At that time there were no large accumulations and there was no unused income. Indeed the income apparently was not enough for Mabel's support and the trustees were required to invade the principal to carry out the testator's direction. By such approach we may examine the whole will in the light of facts which were known or reasonably foreseeable by the testator when he made his will and thus determine more directly and closely what the words of

the will meant to the testator himself, which after all is the test. *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169. With these general observations in mind we come to a consideration of the part of the will here in question.

At the very beginning of the tenth clause the testator makes an unequivocal statement of his paramount intent. There he gives, devises and bequeaths "All the rest and residue of my estate both real and personal" to three named trustees, "but *in strict trust nevertheless for the benefit of my daughter, Mabel Walker \* \* \*.*" (italics ours) Then follows immediately, as the predominant term or condition of that devise and bequest, a positive direction "That my said trustees *shall use the income from said trust estate and so much of the principal* of the same as they may deem necessary for the comfortable support of my said daughter during her life." (italics ours)

Obviously these expressions reflect the testator's paramount intent and show conclusively that he was concerned primarily and solely with the welfare of his only daughter and not with conferring any benefits upon the remaindermen or anyone else. Nor does he elsewhere in the will give or dispose of any *unused income* in whole or part to or for any other beneficiary or purpose. The direction just quoted also shows plainly that he understood the separate elements of his trust estate, namely, income and principal; that he expressly designed a different instruction to the trustees as to their authority and discretion in the use of each; and that he did not intend to have the income treated merely as part of "one trust fund" in order that the unused portion thereof would go to the remaindermen, as argued by them.

The testator first positively directs, without any qualification, that the trustees "shall use the income" of said trust estate for Mabel's comfortable support. Significantly he did not provide that the trustees *may use* the income, nor that they shall use *only so much of the income as they may deem necessary* for her support. The word "shall" usually connotes the imperative and contemplates the imposition of

a duty, unless the particular context and plan require a contrary meaning. No such context or indication as to income is found in this instruction or anywhere else in the will. On the contrary the direction as written is entirely consistent with other provisions which together show a plan and intent to provide for Mabel the equivalent of a vested beneficial life interest in all the income. Indeed we find no provision that expressly or by necessary implication limits Mabel's right to have all the income used for her support and benefit as she, and not the trustees, might ultimately determine.

The second part of the direction deals with the use of the principal as distinguished from income. By contrast with the previous language the statement here is not in the form of a mandatory direction. Rather it plainly contemplates and grants a discretion to the trustees by authorizing them to use "so much of the principal of the same as they may deem necessary" for the comfortable support of Mabel during her life. Grammatically the correlative phrases *so much of* and *as they may deem necessary* clearly qualify only the *principal*. The words "so much of" do not precede the reference to income and in this context and plan cannot properly be transposed or extended to qualify the income.

The remaindermen nevertheless in their argument would construe the whole direction as if it read that the trustees shall use *only so much of the income and principal as the trustees may deem necessary* for Mabel's comfortable support. But such contention requires an unnecessary and unwarranted transposition of one of these correlative phrases and is *essentially* different from the meaning and manner in which the testator expressed his own direction, which clearly was intended to add to rather than cut down his provision for Mabel's beneficial interest in the entire income.

Construed as it is written the direction makes a sensible meaning and is consistent with the other provisions and plan of the whole will. For a similar interpretation of sub-

stantially comparable language see *Dooley* v. *Penland*, 156 Tenn. 284, 291, and *Nashua Trust Co.* v. *Burke,* 84 N. H. 490. Indeed the clearly contrasting language used in this direction to the trustees in dealing with income and principal respectively could hardly be more concisely and effectively expressed to carry out the testator's admitted paramount intent. Having in mind his superior knowledge of Mabel's handicap, peculiar needs, and comforts, and his overwhelming desire to provide for her welfare and security even to the extent of adding to the use of income the possible exhaustion of the *principal* of the residuary estate if found necessary for her benefit, the direction here indicates considered thought and precise expression rather than inadvertence, or poor draftsmanship, or an intent by implication to authorize the trustees to limit Mabel's beneficial interest in the income of said trust for the ultimate benefit of the remaindermen, as argued by them.

Moreover when such mandatory direction to use the income solely for her benefit is coupled with both the significant omission of any stated authority to the trustees to accumulate income and a similar failure to give any income, accumulations or unused part thereof to the remaindermen or anybody else, a definite pattern of the testator's intent is disclosed. That pattern becomes manifest when such direction and deliberate omissions are considered in the light of certain other provisions which together evidence a clear intent to provide Mabel with whatever support, comfort and security *she might ultimately determine.*

In our judgment a consideration of the whole will shows that the testator deliberately withheld such discretion and authority from the trustees and omitted any gift over of income or accumulations thereof because he himself intentionally fixed the total amount of income as the minimum measure of what *he* considered Mabel's comfortable support and security should be. He intended that she should be entitled at least to the use of the income and its accumulations without having to depend on any other person's will

or judgment. On that view there would be good reason for him not to authorize the trustees to accumulate income and not to include any unused portion of income in the gift over to remaindermen. On the other hand if he had intended to give the trustees such discretion and authority, as contended for by the remaindermen, it would have been easy for him to use appropriate language; and it is reasonable in the circumstances here to expect that he would have stated such an intent, if contemplated, in apt language like that used by him in the gift over of the one-eighth part of the residuary estate.

That the testator did not overlook the necessity of authorizing accumulations of income where he so intended, is evidenced by the fact that in disposing of that part of the residuary trust after Mabel's death he made a gift over of "said remaining one eighth (1/8) part of said trust estate *and its accumulations, if any.*" (italics ours) Therefore when he intended to authorize accumulations of income and to dispose of any unused portion thereof, he knew how to express such intent, and he did so in a paragraph within the same residuary clause.

In that connection we are not impressed by the remaindermen's argument that, because of certain alleged inaccuracies of expression or of incompleteness in providing elsewhere in the will for all possible remote contingencies, we therefore should ignore as mere surplusage the existence and effect of the quoted and other expressions, even though they are clear, complete, sensible, and consistent with the usual meaning of the words and the general pattern disclosed by the whole will. In the circumstances we think the above-quoted language from the residuary clause bears on the testator's general intent as to accumulating and disposing of unused income, and also as to the testator's knowledge of the necessity and the way to express such an intent. The contrast between that gift over as quoted and the one under consideration here, both of which appear in the

338

residuary clause, is too significant to be ignored or discarded as surplusage.

It is to be noted that the gift over of "accumulations, if any" is confined to the one-eighth portion of the residuary trust after Mabel's death and is made, not to remote remaindermen but to "my legal representatives at the time of my decease and their heirs, per stirpes, share and share alike * * *." In the circumstances the testator knew Mabel herself and her heirs would be the ultimate beneficiaries under such language. In a previous paragraph of the residuary clause she was given express power to determine at *her* discretion the prior life estates therein provided. In other words she thereby received in effect complete authority to hasten the ultimate gift over of *income and accumulations* of that part of the residuary trust to herself and her issue, if any; otherwise, to her heirs at law. Such express power and discretion were given by the testator to Mabel and not to the trustees.

Moreover it seems quite unreasonable to believe that the testator, who admittedly was concerned only with the welfare of his daughter, would unequivocally express such paramount intent by giving all the residue of his estate in trust for her *sole* benefit, even to directing that the trustees "shall use" all the income and may exhaust the principal if found necessary for her comfortable support, and then would intend to provide by implication that the trustees should have a discretion to limit the use of *income* for her as *they* might determine.

Such a construction would give the trustees discretion which is absent from the testator's plain language. It would also in effect permit them to limit or cut down Mabel's interest in the income, notwithstanding the direction showing that the testator intended to add to and not to decrease it. Further if that discretion were acted upon by the trustees, Mabel would be forced to sue in equity, as suggested by the remaindermen's argument, to obtain the very benefits in the income which the testator intended and expressly pro-

vided for her. Finally such a construction would have him intentionally place the trustees in the embarrassing position of their having divided interests. Thus, notwithstanding the mandatory direction to use the income for Mabel's support and benefit they would have a discretion not to perform their duty thereunder, knowing all the time that by such a default they might accumulate for the benefit of the remaindermen, in whom the trustees were personally interested, the income intended for the sole benefit of Mabel and not for those who were entirely of secondary interest to the testator. The suggestion of such a possibility, even though not actually employed here, together with the other resulting inconsistencies show the unreasonableness of the construction advanced by the remaindermen.

On the other hand such inconsistencies may be avoided and a far more reasonable interpretation of the language of this will may be reached by applying the pertinent rules of construction. Ordinarily an intent on the part of a testator to authorize trustees to accumulate income and to add such accumulations to the principal will not be inferred in the absence of language clearly indicating such an intent. *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R. I. 83, 99; *Industrial Trust Co.* v. *Lathrop,* 72 R. I. 62, 72. We find no express provision in the language of this will authorizing the trustees to accumulate income during the life of Mabel, or to limit the use of income in the trustees' discretion, or to include any unused accumulations of income in the gift over or in any other gift. In our judgment the construction urged by the remaindermen is inconsistent with the other provisions and cannot reasonably be implied from the context and language used by the testator.

But the remaindermen argue that such authority to accumulate income must be stated only where there is a provision for a prior vested life estate to which such income would naturally belong. According to them the will here gives Mabel no vested interest or estate but only a charge

upon the income for her comfortable support and care. However, on our construction of the language and plan of the whole will, the testator intended Mabel to have the equivalent of a vested beneficial interest or estate for life in the whole income. Therefore unless we find authority for the trustees both to accumulate income and to add it to the principal of the gift over to the remaindermen, it legally belonged to Mabel during her life. As previously stated we find no such authority.

Nor do we agree with their contention to the effect that the testator did not make a gift or bequest of the income or of any vested interest or estate therein to Mabel merely because words like "give," "bequeath" or "pay over" are not present in the instruction to the trustees. They argue in substance that in the absence of such words Mabel could not have received a vested interest or estate, and that their omission from the instant will distinguishes it from several otherwise pertinent cases cited by the administrator.

Assuming without conceding the correctness of that premise, this contention overlooks the fact that the testator at the very beginning does "give, devise and bequeath" his *whole residuary estate* to the trustees upon certain conditions of trust *for Mabel's sole benefit;* that the first and predominant condition, which is expressed immediately thereafter, is a mandatory direction that the trustees "shall use the income" for Mabel's comfortable support; that the testator nowhere authorized the trustees to limit that use or to accumulate income; that he made no gift of unused income to the remaindermen or anybody else; and that such express condition of the residuary devise and bequest is consistent with other provisions and the plan of the will.

That contention also overlooks the fact that, notwithstanding the absence of similar words from a direction as to income appearing in a particular clause under consideration in the case of *Farley* v. *Bucklin,* 16 R. I. 378, the court there, upon reading such clause with other provisions of the will,

found that a vested interest in the income for the beneficiary was intended by the testator. In view of our conclusion as to the effect of the language and plan of the whole will here, the distinction urged by the remaindermen is not convincing. The law favors the vesting of estates and once the intent to vest an interest is found the cases cited by the administrator of Mabel's estate, at least as to certain pertinent statements of law and fact, are applicable. See *Rhode Island Hospital Trust Co.* v. *Noyes,* 26 R. I. 323; *Jastram* v. *McAuslan,* 26 R. I. 320; *Tillinghast* v. *Bradford,* 5 R. I. 205.

Moreover in our judgment the reason for not specifically instructing the trustees to "pay over" the income to Mabel personally is precisely the reason which caused him to set up any trust at all. Mabel's known inexperience in business and financial affairs naturally persuaded the testator to omit an instruction to the trustees to pay all the income to her personally. But unquestionably he intended to insure her extraordinary support, protection, and welfare in accordance with the minimum standards which he and not others would provide. He therefore set up the trust, not to prevent the vesting, nor to authorize a limitation or cutting down, of the beneficial interest which he intended and directed that his daughter receive in the quantum of the income, but solely to provide the financial management, business experience, and custodianship which he thought would more securely carry out his paramount intent for her.

Certainly he did not intend to deprive her, whose possible marriage he also had expressly contemplated, of a present right to its complete use for her benefit according to standards which he, rather than the trustees, would establish and which she could ultimately determine and invoke. Her exclusive right at all times to the use of the income according to the plan and provisions is coextensive with the express mandatory duty of the trustees to use all of it *for her sole benefit,* and not to accumulate it in their discretion for others who were merely of secondary interest to the testator. When read with the other provisions in the light of his

special knowledge we think the testator's language discloses a clear intent to give Mabel the equivalent of a legacy of a present beneficial interest amounting in effect to a vested equitable estate for her life in the income of this trust and the accumulations thereof.

Such a construction was approved in the pertinent case of *Harlacker* v. *Clark,* 115 Vt. 261. There an argument like that presented by the remaindermen here was made in connection with the construction of similar language in a will. But that court, noting that income was given *only* to a particular beneficiary, rejected the contention and also cited with approval the following statement from *Bloodgood* v. *Lewis,* 209 N. Y. 95: "The will 'did not empower the trustees to determine, in their discretion, what her share of the residue income should be or how much was bequeathed to her. It empowered them, rather, to determine, in their discretion, how much of the one-fourth equal part bequeathed to her should be expended for her benefit, and made them *custodians and conservators of the unexpended balance'* * * *." (italics ours)

For reasons previously referred to, the testator here intended to limit the trustees to the management, modes and methods of *expenditures* for Mabel's comfortable support and benefit, and also intended that they be custodians of any unused income to which Mabel alone was at all times to be entitled. In the absence of contrary provisions, it follows from the nature of her vested interest that upon her death her administrator would be entitled to the unused income in accordance with the general rule and statute. See *City Bank Farmers Trust Co.* v. *Taylor,* 53 R. I. 126. See also G. L. 1938, chap. 566, §§37, 38. 4 Bogert Trusts §811, pp. 174, 175.

The remaindermen, in order to overcome the absence of authority to accumulate income, contend that unless a previous life estate in the income was first established there would be no legal requirement to authorize such accumulations. This contention is of no merit here because we have

found from the language and plan of the will that Mabel in effect received a legacy in the nature of a vested equitable interest or estate in the income and its accumulations. For the same reason their argument that unused income usually follows the principal is without application.

The remaindermen finally rely principally upon the cases of *Thurber* v. *Thurber,* 43 R. I. 504, and *Perry* v. *Brown,* 34 R. I. 203, to support their contention that the will as a whole and later provisions show an intent to limit and cut down Mabel's interest in the income to a mere charge thereon in her favor to receive only what was necessary for her comfortable support; that she had no interest or estate in the unused income which therefore was legally accumulated by the trustees; and that the accumulated income is part of one residuary trust fund which goes with the principal to the remaindermen. In our judgment these cases are clearly distinguishable on their facts. In both of them there were provisions, express or implied, granting a discretion as to income and *authorizing* the accumulations thereof and *including unused income* in the gift over. In each there was language *expressly limiting* the beneficiary's interest in the income, and either prohibiting its use for anything but personal maintenance or so clearly expressing an intent as to the use of income that it necessarily precluded any construction that the testator intended to vest a beneficial life interest or its equivalent in the accumulated income. To find a vested beneficial life estate there would have required the court to disregard provisions of the will before it. None of these factors are present here.

Of course if the instant will contained express provisions authorizing the trustees to accumulate income, or in their discretion to limit Mabel's interest in the income during her life, or expressly made a gift over after her death of the *unused income and accumulations,* the case would be like *Rhode Island Hospital Trust Co.* v. *Otis,* 77 R. I. 296, 75 A.2d 210. But there the positive language and special plan of the will showed unequivocally an express gift over of the

residuary estate including "any undisbursed income" remaining in the trust after the death of the life tenant. Naturally in the peculiar circumstances and under the express directions of that will the court was constrained to hold that the remaindermen rather than the representative of the deceased life beneficiary were entitled to such unexpended income. The contrast between the language and plan of that will and the one here is so readily apparent that it really points up the arguments and reasons for the interpretation which we have adopted in accordance with the general rules of construction and of law.

From a consideration of the whole will, we are of the opinion that the testator intended Mabel to have a present beneficial interest in the nature of a vested equitable estate for her life in all the income and accumulations of the residuary trust estate provided for by the testator in the tenth clause of his will. Therefore our answer to the question propounded is that the income and accumulations of said trust belonged equitably to Mabel Walker during her life and that the excess or unused portion of the income in the hands of the trustees at her death became payable thereupon to the administrator of her estate for proper distribution according to law.

On June 4, 1952 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

CONDON, J., dissenting. I cannot agree with the court's construction. It holds that Mabel had a vested equitable life estate in income not used by the trustees for her support. This means that Mabel in her lifetime could have demanded that the trustees pay over such income to her. I submit that it is difficult to find good warrant for such a construction in the language of the residuary clause itself. There is nothing in that clause which even suggests that the trustees are obligated to *pay* anything to Mabel. The direction to them is to *use* the income and if need be the principal "for the comfortable support of my said daughter during her

life." Moreover the whole context of the residuary clause strongly negatives the view that the testator intended Mabel should personally receive any income from his estate.

There is no question that Mabel was the chief object of his bounty. We said so when this same will was recently before us for the construction of another portion of the residuary clause. *Carpenter* v. *Smith,* 77 R. I. 358, 75 A.2d 413. But we also said in that opinion that the testator "had no particular interest in his own relatives as such," and had left the bulk of his residuary estate, in the event of Mabel's death without issue surviving, "to certain intimate friends and to a charity." While his dominant intent was to provide for her welfare it was limited to securing comfortable support for her during her life, and did not extend to her heirs generally. Apparently he was desirous that if she should die without issue the major part of the trust estate which he had set up for her personal benefit during her life should go to strangers in blood. In such event he expressly provided that only one eighth should ultimately go to those who were his legal representatives at the time of his decease.

In the light of that express disposition and in the face of the testator's express direction that the income shall be *used by the trustees,* it is not easy to credit him with an intention to give to Mabel for her personal use any portion of the income not needed for her "comfortable support." A more reasonable deduction from the circumstances, it seems to me, is that he intended that such surplus income, if any, should be conserved in the hands of the trustees. In that way his dominant intent to provide for her future welfare would be given stronger effect by making the provision therefor more secure.

In my opinion the testator's concern for Mabel's future financial security, especially in view of the unfortunate condition of her health, was so intense that it precludes any reasonable inference of an intention that she should personally receive the income which was not expended for her "comfortable support." Rather it is reasonable to assume

that if such surplus income became available he would wish it to be retained by his trustees for reinvestment, thus strengthening the trust fund which he had set up to assure Mabel's future security. As was said in our earlier opinion above cited, this concern of the testator was paramount. It ranks with his intent to place his entire residuary estate at the disposal of his trustees, if need be, to provide for Mabel's support during her life.

For reasons sufficient to him the testator did not give Mabel directly any portion of his estate notwithstanding that she was thirty years of age when he executed his will. Apparently he did not think that in her peculiar circumstances it would benefit her to receive funds personally. To carry out that conviction he set up the trust for her "comfortable support" during her life and nominated as trustees certain persons in whom he reposed great confidence. To those trustees he gave extensive powers commensurate with that confidence. After having done those things it is quite unlikely, it seems to me, that he could have intended that Mabel should be given any portion of the income, however great, for her own personal use.

I shall not prolong this opinion by further discussion of the testator's intention or by an extended treatment of the law applicable to my construction of the testamentary language. Nor shall I burden the opinion with citation of authorities which lend support to my view. Suffice it to say that such authorities are discussed in the majority opinion and while they are rejected there I am of the opinion that they furnish good ground upon which to base the construction I favor here.

My construction is based almost wholly upon the intention of the testator as disclosed by the language he has used in his will. Where that intention can be deduced from the testamentary language and it violates no rule of law it is not necessary to resort to other rules of construction to ascertain such intent. In my opinion it was the intention of the testator not to give any unexpended income of the trust fund

to Mabel but to have the trustees retain it for reinvestment as a part of the principal.

### On Motion for Reargument.
#### JUNE 13, 1952.

PER CURIAM. After our opinion in the above cause was filed certain respondents requested and received permission to present a motion for leave to reargue. Pursuant thereto they have filed such a motion, stating therein certain reasons on which they base their contention that justice requires a reargument of the cause. We have carefully considered those reasons and we are of the opinion that they suggest no point which we have not already considered or which in the circumstances warrants such reargument.

The said respondents' motion is denied, and on June 18, 1952 the parties may present to this court for approval a form of decree, in accordance with the opinion, to be entered in the superior court.

*Swan, Keeney & Smith, Frederick W. O'Connell, Ernest A. Jenckes,* for complainants.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan, Charles H. Drummey, Edwards & Angell, Elmer E. Tufts, Jr., Wilfrid E. McKenna, William S. Flynn, Elmer S. Chace, James J. Corrigan, Francis M. Flaherty,* City Solicitor of Attleboro, Massachusetts, for various respondents.