McKnight's Executors *v.* Walsh.

McKnight's Executors, appellants, and Walsh, respondent.

Walsh, appellant, and McKnight's Executors, respondents.

1. The executor and trustee under the will of E. R. McC., deceased, had not such discretionary power that he could pay all the income of the trust fund of $25,000, for the support and maintenance of the infant *cestui que trust*, when it was not necessary or reasonable; although the will gave no direction for the accumulation of interest.

2. The allowance of $700 per annum, out of the income, made by the Chancellor, part of the amount paid to the father for the support of the infant, approved. The amount of the trust fund, the social position of the parties, and the fact that the father was without means to support his son, make such allowance proper and necessary.

3. The excess over this sum of $700, paid by the trustee to the father, must be returned by his estate to the trust fund, but no interest must be charged thereon, as it was paid in good faith, by mistake as to his discretionary power under the will, and he had no use or benefit of this excess of interest. It is not a case for the allowance of interest upon interest.

4. Where no account has ever been reported by the trustee for allowance, and where the trust funds have been retained in his hands, without distinct and separate investment, no commissions will be allowed to the trustee.

5. It is a fundamental principle in regard to trust estates, that the trustee shall derive to himself no gain, benefit or advantage, by the use of the trust funds. Whatever of profit may be made, shall belong to and become parcel of the trust estate.

6. Where the trustee had a large estate invested in lands, stocks, business, &c., and the trust fund was in his hands as a loan before the creation of the trust, and the trust moneys cannot be traced to ascertain the profits made, or the form of investment, it is proper, in stating his account, to make annual rests, and charge interest upon interest.

7. Interest with annual rests allowed on the $1000 retained by the trustee as commissions, which are disallowed; also like interest on the balances of income in the trustee's hands, after the death of the father, which were held and used by him.

The cause was argued upon cross-appeals from the decree made in the Court of Chancery, by which some exceptions to

the master's report were sustained, and others overruled. The opinion of the Chancellor is reported in 8 *C. E. Green* 136.

*Mr. Browning* and *Mr. Williamson,* for the executors.

*Mr. M. Beasley, Jr.,* and *Mr. Pitney,* for Walsh.

The opinion of the court was delivered by
SCUDDER, J.

On bill filed in the Court of Chancery by the executors of the last will and testament of John L. McKnight, late of Bordentown, in the county of Burlington, deceased, praying that an account of the trust fund in their hands, held by said McKnight, in his lifetime, as executor and trustee, under the last will and testament of Edward R. McCall, deceased, might be stated and taken, and a settlement made under the order, direction, and decree of said court; and that whatever, on such settlement, might be found to have been in the hands of said McKnight, or may be in the hands of his executors, less any proper commissions and expenses to be allowed, might, under the order of the court, be paid to successors, to be appointed to receive and receipt for said trust funds; and that the complainants, as executors, and the estate of said McKnight might be discharged therefrom, it was referred to Charles P. Stratton, esquire, one of the masters of said court, to take testimony and state an account.

By the report of the master, it appeared that the amount of the trust fund set apart by the will of Edward R. McCall, deceased, was $25,000; that the total receipts and accumulations of interest were $29,202.48; that the disbursements out of the interest on the trust fund amounted to $20,158.35, leaving a balance in the hands of the complainants, the executors of the will of John L. McKnight, deceased, December 1st, 1870, amounting to $34,044.13.

The will of Edward R. McCall, dated March 25th, 1853, among other things, directed as follows:

"It is my will, that as soon as conveniently can be after my decease, my executor hereinafter named, shall invest of my estate the sum of $25,000, in some safe security, and in his own name, as trustee for my said daughter, Sarah W. McCall, which said sum of money so invested, he shall have and hold to the uses following, to wit:

"*First.* To pay the annual legal interest arising and accruing from said sum of money so invested, personally, in semi-annual payments, to my said daughter, Sarah W. McCall, during her life, taking her own separate receipt therefor, under her own hand, and for her sole and separate use and benefit.

"*Secondly.* From and immediately after the decease of my said daughter, Sarah W. McCall, to have and to hold said sum of money, for and during the minority of any child or children of my said daughter, and until said child or children shall attain the age of twenty-one years; he, my said executor, and his heirs, during the minority of such child or children, appropriating and expending the legal interest arising and accruing from said sum of money, towards the proper maintenance and education of such child or children, and to pay said principal sum to said child or children, on their attaining said age of twenty-one years."

The residue of the testator's estate was given to his daughter, and only child, Sarah W. McCall; and his brother-in-law, John L. McKnight, was appointed executor and trustee.

Mr. McCall died July 31st, 1853. His daughter married Joseph C. Walsh, October 2d, 1853. Their son, Robert C. Walsh, was born June 3d, 1855, and his mother died seven days after his birth, June 10th, 1855.

Joseph C. Walsh married Anna Wood, daughter of George Wood, esquire, of New York city, January 4th, 1858, and died June 13th, 1862.

The master, in his account, charges the trustee with the principal sum, ($25,000,) August 1st, 1853, and interest at six per cent., and credits him with payments of the entire interest to Mrs. S. W. Walsh, up to the time of her death;

after her death he charges the trustee with like interest, and credits him with payments to Joseph C. Walsh, the father of Robert, at the rate of $1000 per annum, payable in quarterly payments, for the maintenance of his infant son. This is continued until July 24th, 1857, with advances and irregular payments to suit the convenience of Mr. Walsh. The master then allows the trustee to take out commissions to the amount of $1000, and thenceforth credits him with the whole amount of interest on the trust fund, paid the father for maintenance of the infant, up to the time of the death of Joseph C. Walsh, June 13th, 1862.

Mrs. Anna Walsh, having been appointed guardian of the infant defendant, Robert C. Walsh, by the surrogate in New York, a sum was ordered to be paid her by the trustee for the support of the infant, and this amount, less than the whole interest, which has varied and increased as needed, has been credited, together with sundry expenses, leaving a balance of interest, with which the trustee has been charged in his account. From March 15th, 1866, the rate of interest was increased to seven per cent.

The master also charged the complainants with the interest on the yearly balance of interest which accumulated in the hands of John L. McKnight, after the decease of Joseph C. Walsh, down to the decease of said John L. McKnight, (November 29th, 1868,) and in the hands of said complainants after his decease, under the order of, first, the surrogate of New York, and second, the Chancellor of New Jersey.

The result of the above statement and account is as above given, viz.: $25,000, the principal of the trust fund; $27,-208.33, total interest on the fund to the date of the report; $1994.15, total interest on the accumulation of interest; making in all $54,202.48; from which deducting the amount of disbursements out of the interest on the trust fund, $20,-158.35, leaves the balance as aforesaid, $34,044.13, in the hands of complainants, December 1st, 1870.

Exceptions were filed to the master's report by the defendant, Robert C. Walsh.

The Chancellor ranges these exceptions under three general classes, which comprise the substance of all the objections made to the confirmation of the report:

*First.* To the allowance of the whole income during the life of Joseph C. Walsh, when it is alleged that he should have allowed only so much as was proper and necessary, and actually expended for the support of the infant.

*Second.* To the allowance of $1000 as commissions, when the trustee was entitled to no commissions.

*Third.* To the allowance of simple interest only. The exceptant contending, that as the money was retained by McKnight in his business, and not invested, he should have been charged with the profits made in the business, or at least with compound interest, by semi-annual rests.

Upon the hearing of these exceptions, the Chancellor decreed that from the date of the death of Sarah W. Walsh, June 10th, 1855, to the time of the decease of Joseph C. Walsh, her husband, June 13th, 1862, allowance be made for the maintenance of the infant, Robert C. Walsh, at the rate of $700 per annum, and that the report be corrected in this particular by charging the complainants with this difference, without interest; and also, that the complainants be charged with the sum of $1000, allowed by the master for commissions to said McKnight, with interest compounded annually thereon from August 1st, 1857, the date of the allowance; and also, that the complainants be charged with the difference between the amount of the charges made by said master of simple interest on the yearly balances of interest which accumulated in the hands of said John L. McKnight, from the time of the decease of said Joseph C. Walsh, (June 13th, 1862,) to that of said McKnight, (November 29th, 1868,) and in the hands of said complainants after his decease, and the amount of compound interest on said yearly balances of interest, to be compounded annually.

These corrections amounted to $7386.24, and added to the former balance, $34,044.13, made a total of $41,430.37, for which the complainants are to account by this decree.

McKnight's Executors *v.* Walsh.

Both parties appeal from the Chancellor's decree, correcting the master's report.

The first question presented is as to the allowance of the whole interest of the trust fund to Joseph C. Walsh, for the maintenance of his infant son ; and whether the reduction of that allowance to $700 per annum is reasonable and proper ; and whether the complainants should be charged with the difference ($800) and interest, either simple or compounded, with annual or semi-annual rests.

I agree with the Chancellor, that the allowance of the whole amount of interest upon the trust fund, for the proper maintenance and education of the child of Sarah W. Walsh, who was an infant but seven days old at the time of her death, was not within the discretion of the trustee by the terms of the will, in such way that he could pay it all to the father, as guardian for nurture, when it was not necessary or proper for the maintenance and education of the child.

The primary objects of the testator's bounty were clearly his daughter, and her child or children, in case there were any. He therefore directs the trustee to pay the annual interest of the trust fund to his daughter during her life, taking her separate receipt, for her sole use and benefit. After her decease, he is to hold the trust fund during the minority of the child, appropriating and expending the interest for its maintenance and education, and to pay the principal sum to the child on attaining the age of twenty-one years.

The trustee seems to have construed this as giving an absolute discretion to pay the whole interest to the father, or any one who would maintain the infant, and that as there was no direction for the accumulation of interest, but only that the principal sum should be paid to the child at his majority, there need be no reservation and accumulation of such part of the annual interest as was not required for the support of the infant. Such construction is erroneous. His discretion is limited to the amount that is proper for the maintenance of the child, and he has no right to expend

a sum that is unreasonable and excessive. This would be a misappropriation of the income.

The cases where an executor or trustee is required to pay the income to a third person, to be applied by such third person for the proper support of certain beneficiaries, differ from this. The trustee performs his part by payment of the income to the designated person, and is not bound to look to the appropriation. Such provisions are usually made in behalf of near relatives, and the payment is directed to be made to one who is an object of the testator's bounty. See *Hadow* v. *Hadow*, 9 *Sim.* 438 ; where the income was to be paid to the wife by the trustees, for the maintenance of the children, and it was held that the testator meant that his widow and children should live together, and that, during her life, she should have the income of the children's property to maintain them, without being liable to account; also, *Berkeley* v. *Swinburne*, 6 *Sim.* 613. The distinction is stated in *Hamley* v. *Gilbert*, 1 *Jac.* 354, where a large residue was given to a mother for or towards the education of her son, in her discretion, without liability to account. It was held that as she had been otherwise provided for in the will, and no part of this residue was intended for her benefit, she took it, subject to the application by the court, of so much as was fit for the education of the son during minority. See *Countess of Shaftesbury's case*, 3 *Lead. Cas. in Eq.* (*606); and cases there cited.

There is nothing in the will to show that the husband of the testator's daughter, and the father of his grandchild was to take any benefit, and when the executor and trustee paid him the total income of the trust estate, it must have been done by mistake as to his authority under the will, and to aid him to maintain the social position to which he was entitled by birth and association. He was the son of Robert Walsh, many years United States Consul at Paris, and after his marriage to the testator's daughter, he had resigned, at her request, his position as an officer in the United States Navy, and, failing to obtain other employment, became reduced in his circumstances.

Although allowances have been made in the English Court of Chancery, from the estate of the heir-at-law, to maintain a home for him and the younger children of the family suitable to their position, yet such allowances are peculiar to their law of primogeniture and customs, which impose peculiar hardships, and call for equitable relief wherever it can be given. Such dispositions can hardly be cited as precedents in this country, where the conditions are so different.

The Chancellor has referred to these decisions, and one in *Matter of Burke*, 4 *Sandf. Ch.* 617, where the estate of two minor daughters was large, and the court allowed to the father, who was in narrow circumstances, a sum out of their incomes much larger than was needful for their necessary expenses, to provide a home for them with their father, including compensation for his charges as guardian.

He also cites three unreported cases in this state, where the Court of Chancery has made liberal allowances from the incomes of infants to aid in keeping up the home of the family. But these cases are all regarded as exceptional, and none cited go to the extent of paying over the entire income of the infant for such purposes. All these allowances were made by the action of the court, and not by the unauthorized act of the trustee, and cannot, therefore, be used to justify the course pursued in this case.

The Chancellor allowed in this case $700 per annum, which is less than half of the yearly income, for the support of the infant. I think this is liberal and sufficient, but not too liberal, when we consider the position of the parties, and the estate that is secured to the defendant when he attains his majority, and the further fact that the father was without means to support his son.

As the excess was paid by the trustee under a mistake as to his authority and discretion, and from no improper motive that appears in the case, (because I reject entirely the charges made by Mr. Walsh against Mr. McKnight after he had become suspicious and soured by his adversity,) there should be no interest paid upon it, either simple or compound. The

trustee had no use or benefit from it, and it is enough for him to return the amount which has thus been unadvisedly taken from the trust income. It is not a case for the allowance of interest upon interest.

The next exception is, that the decree takes away the commissions which the master allowed to the trustee.

Commissions are allowed to executors, administrators, guardians, and trustees by our statute, (*Nix. Dig., p.* 645, § 26,) and the allowance of such commissions is made with reference to their actual pains, trouble, and risk in settling the estate.

In this case no account has ever been reported for allowance, and no investment of the trust fund has ever been made. The will directed the executor to invest of the testator's estate the sum of $25,000 in some safe security, and in his own name, as trustee for testator's daughter. This is also the requirement of the law, that the trust fund shall be separated from the trustee's property, and be kept invested as a distinct and separate fund. This is so important for the security of the trust estate, that the court is not disposed to countenance the infraction of the rule. The executor had given his bond to the testator, dated October 29th, 1849, for $21,200. He cancelled this bond after the testator's death, and added to the amount $3800 cash from the estate, and has held this fund since without investment, paying the interest to the *cestui que trust*, as upon a loan to himself.

In *Jackson* v. *Jackson's Executor*, 2 *Green's Ch:* 113, Chancellor Vroom allowed commissions, he says, "solely on the ground that the parties themselves have made their own arrangement and settlement on the subject. Were the matter considered open, the court would feel strongly inclined to reject the claim altogether, not for want of any power or right to make an equitable and just compensation to trustees, but because the trustees, in this instance, have not done their duty in properly investing the trust fund committed to their care." In the present case, there was a settlement between

Joseph C. Walsh and the trustee, of the commissions; but the father could not make such settlement for his infant son. So it was held, in *Warbass* v. *Armstrong*, 2 *Stockt.* 263, by Chancellor Williamson, that commissions are a compensation for the faithful discharge of duty. In this case it was alleged that the fund had been permitted to remain in the hands of one of the trustees, without investment, and it was said, that if this be so, the commissions must be disallowed. In *Frey* v. *Frey's Adm'rs*, 2 *C. E. Green* 71, Chancellor Green says, that an administrator is entitled to no commissions when he has neglected to invest funds remaining in his hands, or has converted them to his own use. In all the cases, such neglect to invest trust funds is treated as a breach of trust, and commissions are disallowed.

The decree in this particular is also right. The amount of commissions claimed by the complainants on behalf of the trustee, was retained in his hands. The allowance of interest thereon will be determined under the next head.

The last point of appeal is the allowance of compound interest on the $1000 commissions retained by the trustee from August 1st, 1857, to the date of the report, December 1st, 1870, with annual rests, amounting to $2266.11 ; also the allowance of the difference between the amount of simple interest on the yearly balances of interest, which accumulated after the death of Joseph C. Walsh, June 13th, 1862, to the date of report, amounting to $311.80, and the amount of compound interest thereon.

The greater part of the trust fund, $21,200, was in the hands of the trustee at the time of the testator's death, as a loan from him, and was used in the trustee's business, in some way not shown by the evidence before the master. He had a large estate invested in railroad stocks, bank and other stocks, real estate, bonds and mortgages, a brick-yard, and a machine company. The inventory taken in 1869, after his decease, showed the amount of his personal property to be $482,566.64. It is impossible to say in what particular part

of his business, or in what investment, this trust fund was included. As it cannot be traced, the profits made from it, if any there were, cannot be ascertained.

Mrs. Walsh and her husband sought the opinion of George Wood, esquire, December 3d, 1853, who advised that it was the duty of the trustee to invest the trust fund in real property or government stocks.    December 19th, 1853, Mr. McKnight deposited with George Gaskill 250 shares of the stock of the Bordentown Bank, of the value of $105 per share, as collateral security for the trust fund, with power of attorney to transfer the same ; McKnight retaining the privilege to withdraw the stock and substitute a bond and mortgage on real property for $25,000, which he also deposited to substitute for the stock, if required by either party.

Mr. Walsh, by letter dater dated January 26th, 1854, directed Gaskill to deliver the bond and mortgage to McKnight.    In 1856, Walsh alleged that McKnight had withdrawn the bank stock from Gaskill's hands, and was embarrassed in business, and demanded other security. This resulted in a deposit by McKnight of 250 shares of stock of the Delaware and Raritan Canal and Camden and Amboy Railroad Companies, in the hands of Mercer Beasley, esquire, the present Chief Justice, on July 14th, 1856.    This stock was deposited as collateral security, under a temporary arrangement, but has remained on deposit until the present time. The value of the stock has always been largely in excess of the amount of the principal of the original trust fund.    It is clear from the evidence, that neither the stock of the Bordentown Bank, nor these shares of stock of the canal and railroad companies was ever regarded by the parties as an investment of the trust fund, but only as collateral security for the same.    The date of the certificates for the latter stock, for 120 shares, ante-date the death of Captain McCall, and the others are at different dates in 1854, 1855, and 1856.

The dividends of this stock cannot therefore be followed as the distinctive profits of this trust fund.

With this state of facts, what is the true measure of

liability of the trustee's estate? It is evident from our stat-
ute, (*Nix. Dig.* 642, § 14,) that where executors or trustees
make use of the money of minors or others, they shall be ac-
countable not only for the principal, but for the interest
thereon. But how shall this interest be computed?

Chief Justice Ewing, in *Voorhees* v. *Stoothoff,* 6 *Halst.* 145,
in an opinion containing a full examination of the cases down
to that time, (1829,) held that it is a fundamental principle
in regard to a trustee, whether executor, or administrator, or
guardian, or in cases of an ordinary nature, that he shall
derive to himself no gain, benefit, or advantage by the use
of trust funds. Whatever of profit may be made, or may
accrue, shall belong to and become parcel of the estate. And
that when the trustee uses the trust money, in trade or by
loan, he is charged with interest; so, if he mingles it with
his own, and uses it in common; so, if he suffers it to be
idle when it might have been invested. In that case, the
executor was charged with the annual interest on the principal
sum, and allowing six months for receipt and investment of
interest, he was charged with interest on the annual amounts
of interest. The allowance of six months was made because
of the alleged delay of payment and investments, which were
usual at that time. This was in effect, compounding the
interest by annual rests, as has been done in the present case.

An earlier case in New York, (1815,) decided by Chan-
cellor Kent, was followed by this case in our own court. The
rule is there traced through the English law, and the civil
law, and compound interest was allowed by making annual
rests, where an administrator used moneys belonging to the
intestate's estate, in trade, for his own benefit, of the profits of
which he refused to give any account.

Besides the authorities cited in the Chancellor's opinion,
in the present case, see *Frey* v. *Adm'rs of Frey,* 2 *C. E. Green*
71; *Blauvelt* v. *Ackerman,* 5 *C. E. Green* 148.

In a late case, *Burdick* v. *Garrick,* 5 *Ch. App.* 241, (1870,)
Lord Hatherley says: " I cannot, however, think the decree
correct in directing half yearly rests, because the principle

laid down in the case of *The Attorney-General* v. *Alford*, 4 *DeG., M. & G.* 843, appears to be the sound principle, namely, that the court does not proceed against an accounting party by way of punishing him for making use of the plaintiff's money, by directing rests, or payment of compound interest, but proceeds upon this principle, either that he has made, or has put himself in such position as that he is presumed to have made, five per cent., or compound interest, as the case may be." And he further says, that the whole course of decision has tended to this, that the court presumes that the party against whom relief is sought has made that amount of profit which persons ordinarily do make in trade, and in those cases the court directs rests to be made.

The case cited from 4 *DeG., M. & G.*, is explained by Lord Cranworth, in *Mayor of Berwick-upon-Tweed* v. *Murray*, 7 *DeG., M. & G.* 497, as not meaning that a defaulting trustee would never be charged with interest at five per cent., or upon the principle of annual rests, but with simple interest, at four per cent., where there were no circumstances to show that he had made profit by his misconduct. The case was determined upon the circumstances, and recognizes the principle of dealing rigorously where the money is misappropriated.

*Robinson* v. *Robinson*, 1 *DeG., M. & G.* 247, is a case where there was an omission to invest, in neglect of a direction in the will, and the *cestuis que trust* were held not to have the option of charging the trustees with the moneys which would have been produced if the moneys had been invested in the funds designated, but were only entitled to have the trust moneys replaced, with interest at four per cent.

I close my examination of this case with a reference to the opinion of Justice Grier, in *Barney* v. *Saunders*, 16 *How.* 542, where, with his remarkable terseness and distinctness, he says: "On the subject of compounding interest on trustees, there is not, and indeed could not well be, any uniform rule which could justly apply to all cases. When a trust to invest has been grossly and willfully neglected; where the funds have been used by the trustees in their own business, or

profits made, of which they give no account, interest is compounded as a punishment, or as a measure of damages for undisclosed profits, and in place of them. For mere neglect to invest, simple interest only is imposed."

No one who knew Mr. McKnight will suppose that he thought he was subjecting himself to these animadversions, and the application of such rigorous rules of liability, in the execution of this trust. But there can be no distinction made between him and others who are entrusted with the care of property of infants and others. No one can speculate with trust funds, or put them in peril by leaving them without proper investment, or suffer them to remain idle, without a due measure of responsibility. He was self-confident, and knew that the funds were safe in his hands; and doubtless thought it was better to hold them as he did, where there would be no taxation against his niece or her child's property; but he was disobeying the direction of the will, and putting the trust fund to the hazard of his own business. This he had no right to do.

The $1000 which he retained as commissions from the interest of the trust fund, and the balances of interest in his hands after the death of Mr. Walsh, which he held and used in his business, were rightly charged against him, with annual rests, which in effect compounds the interest against his estate, and there is no error in that part of the decree.

The decree is affirmed in all points without costs in this court, as both parties have appealed.

For affirmance—BEDLE, CLEMENT, DALRIMPLE, DEPUE, DODD, GREEN, LATHROP, SCUDDER, VAN SYCKEL. 9.

For reversal—None.