43 N.J. Super. 513 (1957)
129 A.2d 302
FIDELITY UNION TRUST COMPANY, AS SUBSTITUTED TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF C.E. HENRY STENGEL, DECEASED, PLAINTIFF-RESPONDENT,
v.
HENRY IVAN STENGEL, CARL RAYMOND STENGEL, ALSO KNOWN AS K. RAYMOND STENGEL, INDIVIDUALLY AND AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF ANNIE MAY STENGEL, DECEASED, DEFENDANTS-RESPONDENTS, AND INEZ STENGEL GAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1957.
Decided February 13, 1957.
*514 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Edward J. Brown argued the cause for plaintiff-respondent (Messrs. Riker, Emery & Danzig, attorneys).
Mr. Edward J. Russo argued the cause for Henry Ivan Stengel, Carl Raymond Stengel, also known as K. Raymond Stengel, individually and as executor of the last will and testament of Annie May Stengel, deceased, defendants-respondents (Messrs. Nugent & Rollenhagen, attorneys. Mr. Frederick M. Rollenhagen, of counsel).
Mr. Austin B. Johnson, Jr., argued the cause for Inez Stengel Gay, defendant-appellant.
The opinion of the court was delivered by CLAPP, S.J.A.D.
The appellant, Mrs. Inez Stengel Gay, is one of the three remaindermen of a trust fund created by the will of her grandfather, C.E. Henry Stengel, of which fund the Fidelity Union Trust Company is presently the sole substituted trustee. She appeals from a judgment of the Superior Court, Chancery Division, insofar as the judgment directs the trustee to pay certain income of the fund to the executor of her grandmother, Annie May Stengel, *515 the life beneficiary under the trust. Mrs. Gay claims the income should go to the remaindermen.
On April 19, 1914 the testator died, leaving his residuary estate subject to these trusts:
"Second: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my executors hereinafter named and the survivors and survivor of them upon the following trusts:
* * *
(3) To set apart and hold and invest for each of my sons, Henry Ivan Stengel and Carl Raymond Stengel, the sum of ten thousand dollars ($10,000.00) and to pay the principal of the said sum so set aside, held and invested, to my said sons if and when they respectively attain the age of twenty-five (25) years.
(4) To set apart, invest and hold for my daughter, Dorothy Inez Stengel, the sum of ten thousand dollars ($10,000.00) and to pay the income that may arise therefrom after my said daughter shall attain the age of twenty-one (21) years to her quarterly from the time that she attains said age of twenty-one (21) years until she attains the age of thirty (30) years, and if and when my said daughter shall attain the age of thirty (30) years then to pay and make over to her the principal of said sum.
(5) To pay the net income from my said trust estate (including the income from the sums before directed to be set apart, held and invested for my sons and daughter until the principal thereof or the income therefrom shall be payable to my said sons and daughter as hereinbefore provided) to my beloved wife, Annie May Stengel, quarterly during her life if she shall so long remain my widow, for the support and maintenance of herself and the support, maintenance and education of my children during their minority.
(6) At the death or remarriage of my said wife, to divide, make over and pay the remaining principal of said trust fund and any income therefrom that shall not have been paid to my said wife under the foregoing provision, among and to my children in equal shares or parts; the issue of any deceased child to take the share or part to which the parent would have been entitled if living." (Italics added.)
On January 22, 1956 the life beneficiary, Annie May Stengel, died. Mrs. Gay is the only living child of testator's only daughter, Dorothy Inez Stengel, who died in 1932; and she and the testator's two sons named in the will are the sole remaindermen.
The income which the Chancery Division directed to be paid to Mrs. Stengel's executor consists of bond interest and *516 ordinary dividends, as follows: $7,714, which was in the trustee's hands at her death; and $2,153 accrued prior to her death, but received by the trustee thereafter. It is to be observed that no question is raised as to the proper method of apportioning the ordinary dividends included in the $2,153 (the dividends have been apportioned by the trustee on a day to day basis according to the formula stated in 5 N.J. Practice § 249 n 4, pocket supp. 1956); and also that the Principal and Income Act does not apply to this will. N.J.S. 3A:14A-9.
The general rule is that where a trust containing interest-bearing investments is made payable to a person for life, he is entitled to so much of the net interest as accrues during his life estate, even though it is received after his death, and even though the will directs the income to be paid to him at specified periods of time. In the case before us, the parties have analogized ordinary dividends to interest (pursuant to the formula above referred to).
But the rule does not obtain where the will requires some other disposition of the income. The question here is whether the clause in the sixth subparagraph, italicized above, takes the case out of the rule. It might perhaps be claimed that this clause, when read with the italicized words in the fifth subparagraph, is susceptible to four different interpretations.
First, it may be argued that the words "for the support and maintenance" of the life beneficiary, found in the fifth item, are indicative of an intention to create a trust for her support, so as to provide her with only such part of the income as is necessary for that purpose. The italicized clause in the sixth subparagraph lends itself to this construction, for it serves then to pass to the remaindermen the surplus income. Among the authorities that might be cited as bolstering in some measure that view, see Van Blarcom v. Winkle, 36 N.J. Eq. 103, 105, 106 (Ch. 1882); Conover v. Fisher, 36 A. 948, 950 (Ch. 1897); Kidder's Ex'rs v. Kidder, 56 A. 154, 155 (Ch. 1903); Coffin v. Watson, 78 N.J. Eq. 307, 313, 314 (Ch. 1911), affirmed 79 N.J. Eq. *517 643 (E. & A. 1912). On the other hand, it may be argued that the words "for the support and maintenance" of the life beneficiary express merely the motive of the gift and hence have no legal effect whatsoever; in other words, that the testator intended to confer upon the life taker an unqualified gift of income. Among the authorities that might be cited as offering some sustenance to this construction, see Elkinton's Ex'r v. Elkinton, 18 A. 587, 589 (Ch. 1889); McKnight's Executors v. Walsh, 24 N.J. Eq. 498, 504 (E. & A. 1873); Maynard v. Cleaves, 149 Mass. 307, 21 N.E. 376 (Sup. Jud. Ct. 1889); Thornton v. Stanley, 55 Ohio St. 199, 45 N.E. 318 (Sup. Ct. 1896). Further see Jastram v. McAuslan, 26 R.I. 320, 58 A. 952 (Sup. Ct. 1904); Restatement, Trusts § 154(d); 2 Scott, Trusts (2d ed. 1956) 1081; 3 Page, Wills (3d ed. 1954) § 1171; 4 Powell, Real Property § 559 (1954).
It might be urged, in justification of the former construction, that the fifth subparagraph creates a valid trust (or subtrust) to provide for the support and education of testator's children during their minority, which could not be defeated by the death of their mother before they come of age. See Van Blarcom, Conover, Kidder's Ex'rs and Coffin, supra. Indeed the words indicative of such a trust or subtrust take on added significance, if they be read in connection with the third and fourth subparagraphs. But if we should find a true trust to have been created for the children, should we not also say that the fifth subparagraph creates a valid trust for the widow, restricted to the income requisite for her support? On the other hand it is to be observed (among other matters that might be mentioned) that the whole of the net income is given for support, cf. Harlacker v. Clark, 115 Vt. 261, 56 A.2d 468, 470 (Sup. Ct. 1948); if the testator intended thereby to limit her to so much of the income as was necessary for support, he has not used apt language.
We shall not decide the point, but shall assume that Mrs. Stengel's interest in the income is unlimited and that the words as to support are to be taken as expressive merely of *518 the motive of the gift; for the respondents take the view here assumed, and the appellant does not raise the question. We therefore, rejecting the first interpretation of the clause above suggested, will assume that the italicized clause in the sixth subparagraph serves some purpose other than as a vehicle to convey to the remaindermen the surplus income not needed for support.
The second suggested interpretation of the italicized clause in the sixth subparagraph is the one advocated by the appellant. Under it the remaindermen would be entitled to any income in the trustee's hands at the life beneficiary's death, regardless of whether it was theretofore due and payable to her. The will calls for the payment to her "quarterly" of (as above assumed) the entire income received on or before each quarterly date, less commissions and such reasonable amounts as may be needed to meet present expenses or those reasonably anticipated. Restatement, Trusts, § 182; Scott, supra, § 182; see Ash v. Ash, 126 N.J. Eq. 531, 543 (Ch. 1940).
In that connection one may ask this: when do these quarterly dates occur? The trust, it will be observed, consists of a portion of the residuary estate; and hence, unless the will otherwise directs  and there is no contrary direction here  the income is due the life beneficiary from the time of the testator's death, namely, from April 19, 1914. Gaede v. Carroll, 114 N.J. Eq. 524, 530 (E. & A. 1933). It follows that the quarterly payments are due as of three months after his death and quarter-annually thereafter. Morristown Trust Co. v. Work, 139 N.J. Eq. 497, 500 (Ch. 1947). Accordingly, a quarterly payment became due on January 19, 1956, three days before the life beneficiary died.
However, the scheme provided by the will for the payment of income is affected by the fact that the life beneficiary became incompetent some years ago and a guardian was appointed for her. In that circumstance the duty of the trustee was to turn over to her guardian only the amount of income needed for her support and also, it is important *519 to note, to accumulate the surplus income for her benefit. Adrain v. Koch, 83 N.J. Eq. 484, 491 (Ch. 1914), affirmed 84 N.J. Eq. 195 (E. & A. 1915); Scott, supra, § 182.1. It is to be observed that at the time of the last payment made by the trustee to the guardian, apparently in November 1955, a very substantial amount of income remained in the trustee's hands.
We cannot suppose that by the very general clause in the sixth subparagraph, that we have italicized, the testator intended to give to the trustee a power through which it could  by withholding the income intentionally or otherwise  alter the rights of the widow in that income on the quarterly dates. Nor do we think that the provision indicates that the trustee was to acquire such a power when she became incompetent. For such an authority would enable the trustee to accumulate for the benefit of the remaindermen the income which the testator had already given to her by express terms in the fifth subparagraph. 3 Scott, supra, 1801. The second construction is therefore rejected.
Third, it may be said, as the Chancery Division did and as the respondents do now, that the italicized clause in the sixth subparagraph leads to the same result as that reached by the general rule in the absence of such a clause; in other words that the life beneficiary's estate is entitled to all the income received by the trustee during her life estate, and all that accrued prior to her death, though received thereafter. Fourthly, it may be urged that this clause passed to the remaindermen the following: the income, if any, received by the trustee between January 19, 1956 (when the last quarterly payment became due) and January 22, 1956 (when the life beneficiary died); and the income, in the amount of $2,153, accrued but not received by the trustee up to the time of her death. Apparently no income was received by the trustee or payable to it between the two dates stated, and hence in connection with the fourth contention we deal only with the accrued income in the amount of $2,153.
In support of the third position, respondents rely heavily on Commercial Trust Co. of New Jersey v. Spiegelberg, 117 *520 N.J. Eq. 171 (Ch. 1934), affirmed sub nom. Commercial Trust Co. of New Jersey v. Mason, 119 N.J. Eq. 376 (E. & A. 1936). There the court was called upon to construe a direction to divide and pay, upon the life beneficiary's death, the corpus of a trust fund
"together with all accumulations thereon and all income * * * thereof."
Recognizing that the significance of the word "accumulations" may depend on its context, the courts there held that the remaindermen took merely the income accruing after the life beneficiary's death. The word is loosely used in that will (but cf. Matter of Watson's Will, 262 N.Y. 284, 186 N.E. 787, 791 (Ct. App. 1933)).
However, under the special circumstances presented by other wills, the term "accumulated," when used with reference to income, has been construed as passing to the remaindermen the income that accrues up to the life beneficiary's death from the time of the last payment of income to the beneficiary. Lippincott v. Ridgway, 11 N.J. Eq. 526, 533, 534 (Ch. 1858); Lewis v. Towar, 45 A. 999 (Ch. 1900); Barrett v. Barrett, 134 N.J. Eq. 138, 151 (Ch. 1943); cf. Titsworth v. Titsworth, 107 N.J. Eq. 436, 441 (Ch. 1931).
Some attempt is made by the trustee to sustain the holding below on the ground that the words of the fifth subparagraph "for the support and maintenance of herself" are indicative of an intention on the testator's part that the life beneficiary should have all the income accruing to her death. The contention seems to be that these words, expressing the testator's concern for her support, demonstrate that he wanted her to be able to incur expenses from day to day, in anticipation of income as it accrues to the trust even before it is received by the trustee. Compare 2 Scott, supra, 1855; Fidelity Union Trust Co. v. Noll, 124 N.J. Eq. 415 (Ch. 1938), and cases cited. Further cf. Morgan v. Morgan, 41 N.J. Eq. 235, 238 (Ch. 1886).
We are unpersuaded. We think that the italicized clause of the sixth subparagraph cannot be that easily deprived of *521 its plain meaning. It is our conclusion that under the circumstances before us the clause conveys to the remaindermen the accrued income in the sum of $2,153, which had not been received by the trustee at the life beneficiary's death. In re Baldwin's Estate, 69 Cal. App.2d 760, 160 P.2d 124 (Ct. App. 1945); Nading v. Elliott, 137 Ind. 261, 36 N.E. 695 (Sup. Ct. 1894); Matter of McManus' Will, 282 N.Y. 420, 26 N.E.2d 960, 962 (Ct. App. 1940); In re Dexter's Estate, 134 Misc. 195, 235 N.Y.S. 763 (Surr. Ct. 1928); In re Merriam's Estate, 168 Misc. 932, 6 N.Y.S.2d 692 (Surr. Ct. 1938); Rhode Island Hospital Trust Co. v. Otis, 77 R.I. 296, 75 A.2d 210 (Sup. Ct. 1950), commented on 49 Mich. L. Rev. 1256 (1951); Lemmon v. Wilson, 204 S.C. 50, 28 S.E.2d 792, 805 (Sup. Ct. 1944); cf. Matter of Watson's Will, 262 N.Y. 284, 186 N.E. 787 (Ct. App. 1933) cited above; Kirwin v. Hall, 169 Wash. 501, 14 P.2d 62, 65, 66 (Sup. Ct. 1932). In general, see 3 Scott, supra, §§ 235A, 238; Annotation, 141 A.L.R. 1466 (1942).
The general rule above stated, under which a life beneficiary receives the income accrued to his death, obtains in the absence of a contrary direction in the will. While the rule is one of convenience, it rests also on the supposition that the testator would have wished the beneficiary to have the income accruing from the commencement of the trust to the time of its termination. Under the rule, in the absence of an indication in the will of a contrary intention, the accrued income, such as the $2,153 before us, would go to the life beneficiary's estate: that is (after the beneficiary's debts are satisfied), in part, to the federal and state governments for the payment of estate and inheritance taxes in connection with the beneficiary's estate (a matter to be reckoned with, when dealing with wills made today, though not in the case of wills, such as the present one which was drawn in 1909), and as for the balance, to the persons taking that estate, in whom the testator might have no interest. With these considerations in view, it seems clear to us that where a testator indicates in his will that he does *522 not want such accrued income to go to the beneficiary's estate, there should be no reluctance on the court's part in effectuating his intention. In this case as we have already said, the testator's expressions in his will furnish very adequate evidence of an intention to pass to the remaindermen the $2,153.
We affirm that portion of the judgment under consideration which directs the trustee to pay Mrs. Stengel's executor the $7,714 in income, but reverse that portion which directs it to pay him the $2,153 in income. The latter sum goes to the three remaindermen in equal shares.
Modified accordingly.