GEORGE W. WYCKOFF, NATHAN W. PEARSON, and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, trustees under an Agreement of Trust with Ailsa Mellon Bruce,
Plaintiffs,

*vs.*

LLOYD K. GARRISON and the BANK OF NEW YORK, Executors of the Estate of Audrey B. Currier, and Guardians of the Property of the infants below named, Alan Dworsky and Edith Entenman, Guardians of the Property of the infants below named, Audrey B. Currier, Andrea B. Currier, Lavinia M. Currier and Michael S. Currier, infant children of Audrey B. Currier, Ailsa Mellon Bruce, Trustor of the trust, John G. Simon and Claire B. Simon, Guardians of the Persons of said infant children,
Defendants.

*New Castle, December 12, 1967.*

*Edmund N. Carpenter, II,* and *James T. McKinstry,* of Richards, Layton & Finger, Wilmington, for plaintiffs.

*Richard F. Corroon* and *Robert K. Payson,* of Potter, Anderson & Corroon, Wilmington, for defendants Lloyd K. Garrison and the Bank of New York, executors of the Estate of Audrey B. Currier.

*James M. Tunnell, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, guardian *ad litem* for defendants Andrea B. Currier, Lavinia M. Currier and Michael S. Currier.

MARVEL, Vice Chancellor: Plaintiffs are the present trustees under an agreement entered into on August 6, 1935, between Ailsa Mellon Bruce as trustor and Wilmington Trust Company and two individuals, since resigned, as trustees. Under the terms of such agreement Mrs. Bruce placed certain property in trust for the benefit of her issue during their lifetime, with remainder over to the descendants *per stirpes* of deceased children of the trustor.

The death of Audrey Bruce Currier, the only child of the said Ailsa Mellon Bruce born within the initial accumulation period of the trust, hereinafter more fully explained, having been found to have occurred on January 17, 1967, plaintiffs seek instructions as to how income of the trust which had accumulated as of the time of Mrs. Currier's death but which had not been paid over to such life tenant as well as trust income which had accrued prior to Mrs. Currier's death but which had not been collected by the trustees prior to such sole life tenant's death, should be treated by the trustees as between the respective claims of Mrs. Currier's estate and those of the guardians of such life tenant's three minor children. Named as defendants to the action are the executors of Mrs. Currier's estate, the guardians of the property and persons of Mrs. Currier's minor children, and the trustor, Mrs. Bruce. The trustees' final monthly payment of income to the life tenant, Mrs. Currier, was made on December 30, 1966. Between that date and the date of her death, namely, January 17, 1967, the trustees received but did not pay out to the life tenant income of approximately $33,000. As of the same date some $45,000 of income had accrued in the trust but had not been received by the trustees.

The trust agreement here in issue provides that following a period of accumulation of income, namely twenty-one years after the date of the trust or upon the death of the trustor, whichever event shall first occur, the trust estate therein provided for "* * * principal and undistributed income thereof * * *", shall be divided into separate shares for trustor's then living issue. As of the effective date for such division, namely twenty-one years after the creation of the trust, the trustor's sole issue was Mrs. Currier, and from the time that Mrs. Currier attained the age of twenty-one years until shortly before her death, such life income beneficiary received "* * * the net income of such share set aside for such child, quarter-yearly or at such other

regular intervals as Trustees from time to time shall find convenient, for and during the period of * * * her natural life * * *". As a matter of practice, the trustees were paying over such income to Mrs. Currier on a monthly basis at the time of her death, her last payment of income having been paid out, as noted above, on December 30, 1967.

The trust instrument goes on to provide that upon the death of any issue of the trustor for whom property is so held in trust, that the trustees "* * * shall forthwith assign, transfer, convey, and deliver such share or the undistributed part thereof as shall then be held in trust hereunder, principal and undistributed income thereof, if any, free from this trust, unto the descendants *per stirpes* of the issue so dying * * *" with provision made for the accumulation and special spendthrift application of income for those descendants who had not then attained the age of twenty-one years. The agreement provides, however, that such share or portion of a share so paid over to a descendant of a deceased life tenant together with any accumulated income should nonetheless be deemed vested in interest in any such minor descendant.

Counsel for plaintiffs and for the guardian *ad litem* take the position that not only income on hand at the time of Mrs. Currier's death but also that which had accrued as of such date should be paid over to or held for the benefit of Mrs. Currier's children. Counsel for the executors of Mrs. Currier's estate contend, on the other hand, that not only income on hand at the time of Mrs. Currier's death but that which had merely accrued on said date should be paid over to such executors.

 Counsel agree that under Delaware law a trustor is free to specify the manner in which income shall be apportioned between a life beneficiary and trust remaindermen and that apportionment here is governed by the language used in the instrument in issue. However, it is the law generally that unless the trustor has indicated a contrary intent that a trustee is required to pay over to the estate of a life tenant not only income in his hands at the time of a life tenant's death but also that accrued at the time of such event, *Bogert, Trusts and Trustees,* § 818 p. 346, and *Vol. 3, Scott on Trusts (2nd Ed.)* § 235A, p. 1802. Compare *Wilmington Trust Co. v. Wilmington Trust Co.,* 25 *Del.Ch.* 193, 15 *A.2d* 665.

Thus, the question to be decided is whether or not the directions contained in the trust agreement in issue constitute a sufficient showing of intent on the trustor's part that income on hand or accrued at the time of Mrs. Currier's death should be paid to her descendants *per stirpes* rather than to the estate of such life tenant.

The cases relied on by the executors to sustain their contention that the trustor in the case at bar failed adequately to disclose an intent that remaindermen should receive income either on hand or accrued at the time of the death of the life tenant appear to be influenced to a considerable degree by the strict rule against accumulations existing in the jurisdictions involved at the time of the decisions relied on.[1] See *In re Weinmann's Estate*, 223 *Pa.* 508, 72 *A.* 806; *In re Kenney's Estate*, 393 *Pa.* 30, 141 *A.2d* 839, and *Matter of Keogh*, 112 *App. Div.* 414, 98 *N.Y.S.* 433, *aff'd mem.*, 186 *N.Y.* 544, 79 *N.E.* 1109. Such strict rule, however, has not been recognized in Delaware by statute or otherwise. See *Equitable Guarantee and Trust Company v. Rogers*, 7 *Del.Ch.* 398, 44 *A.* 789, *Lewes Trust Co. v. Smith*, 28 *Del.Ch.* 64, 37 *A.2d* 385, and compare *Asche v. Asche*, 41 *Del.Ch.* 481, 199 *A.2d* 314, reversed on other grounds, (*Del.Sup.Ct.*) 210 *A.2d* 306.

The result reached in those cases decided in favor of a life tenant's estate and against remaindermen (where the language of the instrument and the state of the law concerning accumulations do not compel a contrary holding) have also been influenced by the principle that an absolute life estate should not be allowed to be eroded and the possibility that were accumulated and accrued income, as of the date of death of a life tenant, not deemed to be property of his estate, a dilatory or dishonest trustee might seek to deprive a life tenant of his property rights by merely withholding income in an arbitrary manner, *In re Kenney's Estate, supra; In re Yates' Estate*, 281 *Pa.* 178, 126 *A.* 254, and *Commercial Trust Co. v. Spiegelberg*, 117 *N.J.Eq.* 171, 175 *A.* 164, *aff'd Commercial Trust Co. v. Mason*, 119 *N.J.Eq.* 376, 182 *A.* 875. But see *Fidelity Union Trust Co. v. Stengel*, 43 *N.J. Super.* 513, 129 *A.2d* 302, which held, in apparent contradiction to the flat ruling in the *Spiegelberg* case, that in light of the language em-

---

1. Recent legislation appears to have liberalized the rule in Pennsylvania and New York. *Vol.* 1. *Scott on Trusts* § 62-11 (1966 *Supplement*).

ployed in the will in issue, income accrued at the time of a life tenant's death but received by the trustee after such death should be paid over to remaindermen.

In the case at bar, the agreement directed that the trustees were to pay over net income to the life tenant "* * * quarter-yearly or at such other regular intervals as trustees from time to time shall find convenient for and during the period of * * * her natural life." And, as was noted earlier, Mrs. Currier was receiving substantial income payments each month at the time of her death. Having been of age for several years prior to her death, she was under no disability to insist on prompt income payments "at regular intervals" had her trustees been derelict in their duty.

But the question to be decided remains, namely what was the trustor's intention in entering into the trust indenture here in issue, such intention being of paramount importance in determining the correct allocation of income in a case such as this unless the trustor's purpose is thwarted by fixed rules of law such as those against perpetuities and unreasonable accumulations, the latter doctrine being controlled by statute in certain states. See *Vol. 1, Scott on Trusts, (2nd Ed.)* § 62.11, p. 559 *et seq.*

First of all, the trustor of the present trust clearly expressed an intent to place designated property in trust for a period of twenty-one years or until her death, which ever should first occur, during which time net income was to be accumulated. Accordingly, there is no doubt but that during this period all "undistributed" income became part of principal. In other words, an intention to preserve and pass on income was clearly demonstrated at the onset. Following such period of accumulation, the trustees were instructed "* * * to divide the trust estate, principal and undistributed income thereof, if any, into shares for Trustor's then living issue * * *". Thereafter, the trustees were directed (subject to arrangements for special distributions) to hold further accumulation of net income in trust for a child who had not attained the age of twenty-one years at the end of the initial accumulation period of trust, as well as to pay on a quarter-yearly or other convenient basis net income of the trust to such children of the settlor who had then or who thereafter reached the age of twenty-one years.

Next, the trust provides that upon any issue of the trustor more remote than children attaining the age of twenty-one years, who is entitled to a trust share or who is twenty-one at the time such share is set aside, then there shall be an assignment of such share to such issue "* * * principal and undistributed income thereof, if any, free from this trust."

Finally, the trust directs that upon the death of any issue of the trustor, the trustees "* * * shall forthwith assign, transfer, convey and deliver such share or the undistributed part thereof as shall be held in trust hereunder, principal and undistributed income thereof, if any, free from this trust, unto the descendants *per stirpes* of the issue so dying * * *" provision being also made for the vesting in interest of any such share "* * * together with any accumulated income thereof * * *" notwithstanding the minority of any such minor as of such time. Significantly, the word "vest" was not used in connection with the creation of the interest of the life tenant.

 In my opinion, rather than disclosing an overriding intention to benefit the life tenant, the trust instrument here in issue, in its repeated use of the phrase "principal and undistributed income" in the several provisions above referred to, was drawn so as to bring about the maximum passing on of trust property to descendants of the life tenant. Where a phrase is repeated in a legal instrument, there is a presumption that it is being used consistently unless a contrary intention appears, *Equitable Trust Co. v. Johnson,* 28 *Del.Ch.* 45, 36 *A.2d* 257, and *Goldberger v. Goldberger,* 34 *Del.Ch.* 237, 102 *A.2d* 338.

I also believe that the use of the word "forthwith", in the trustor's directions to her trustees to pay over "principal and undistributed income" to descendants of a deceased life tenant was deliberate. In other words, the issue of a deceased life tenant were to receive a vested interest in such tenant's principal and all accumulations then attributable to such principal. In brief, we are here concerned with the desires of a woman of means, while taking care to provide for her own issue, to pass down "principal and undistributed income thereof" to her living descendants. We are not concerned with the type of case in which the interests of a life tenant are antithetical to those of remaindermen. Here, minor trust beneficiaries, whether they be life

tenants or remaindermen, are merely to be maintained and educated out of income, the balance of income being consistently accumulated for the future. In addition, provision was made for a proportionate division of the share of a life tenant dying without issue, "principal and undistributed income thereof", among living life tenants holding similar shares. Rather than expressing an intent to provide absolute rights for a deceased life tenant, the trustor here intended to set up, within the limits allowed, a plan designed to benefit, to the fullest extent possible, her living descendants.

In the case of *Rhode Island Hospital Trust Company v. Otis*, 77 *R.I.* 296, 75 *A.2d* 210, a testator placed his residuary estate in trust and directed that his wife should be paid income therefrom "* * * so long as she shall live * * *". The testator went on to direct that upon his wife's death "* * * said trustee shall stand seized and possessed of said residuary estate including any undisbursed income in trust * * *". In 1943, the life tenant died in Switzerland, having, due to war conditions, received only a part of trust income due her. It was contended by counsel for the deceased life tenant that the phrase "undisbursed income" referred to income accruing between the date of death of the life tenant and the distribution of the trust estate to the remainderman.

The court ruled, however, that the word "undisbursed" meant "not paid out"; that there was no ambiguity in the language used and that the remainderman, a hospital, was entitled to receive what the testator intended it should, namely not only trust principal but also all income not paid out to the life tenant during her lifetime. In other words, the testator, having directed that "undisbursed income" should become part of his residuary estate, such direction was ordered to be carried out, there being no rule in Rhode Island forbidding such an accumulation of income.

■ I find the cited Rhode Island case persuasive here, and while the case of *Equitable Trust Co. v. Johnson, supra,* is relied on by the executors to support a contrary result, such case was concerned with a contingency which did not happen. The result was a finding of an intestacy, the Court declining to find an implied gift of income. The word "undistributed" has essentially the same meaning as the word undisbursed". The trustor having given directions to pay over "un-

distributed income" to the descendants of the life tenant, free of trust, I find that such direction, read in light of the overall purpose of the indenture here in issue, requires that such income, namely that on hand on the date of Mrs. Currier's death as well as that accrued on the same date be paid over to the trust remaindermen.

On notice, an appropriate order may be presented.